Argued July 5, peremptory writ allowed September 9, 1966

## BRAWNER *v.* SANDERS

417 P. 2d 1009

*William M. Dale,* Portland, argued the cause for defendant. With him on the briefs was A. C. Roll, Roseburg.

*Phil Cass, Jr.,* Eugene, argued the cause for plaintiff. On the brief were Riddlesbarger, Pederson, Brownhill & Young, Eugene.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

GOODWIN, J.

This is an original proceeding in mandamus to test the vitality of the rule that "[i]n the absence of an enabling statute, a voluntary association cannot be sued by its association name. It has no legal existence, and the persons composing it must be joined individually * * *." *Kimball v. Lower Columbia Fire Assn.*, 67 Or 249, 252, 135 P 877 (1913).

Edward Brawner filed a complaint in an action at law for damages for personal injuries against Local Union No. 3-436, International Woodworkers of America, AFL-CIO, and Western States Regional Council No. III, International Woodworkers of America, AFL-CIO. The defendants appeared specially and moved to quash the service of summons on the ground that jurisdiction over an unincorporated labor union could not be obtained by service upon its officers of a complaint and summons designating the union as a legal entity. The motion was allowed, and the present proceedings are before us to determine whether unions can be sued in this state as legal entities.

In support of the trial court's ruling, the unions rely upon the *Kimball* case, supra, and other Oregon decisions,[1] legislation providing limited relief in equity in certain kinds of labor disputes,[2] and the doctrine of separation of powers. The plaintiff-petitioner, on the other hand, marshals the support of modern legal

---

[1] Fennell v. Hauser, 141 Or 71, 80, 14 P2d 998 (1932) (political committee); In re Water Rights of Willow Creek, 119 Or 155, 172, 236 P 487, 236 P 763, 237 P 682, 239 P 123 (1925) (water-users' association); Cousin v. Taylor, 115 Or 472, 476, 239 P 96, 41 ALR 750 (1925) (telephone users' association).

[2] See, e.g., ORS 662.240 (dealing with hot cargo, secondary boycott, injunctive relief, and damages) and 661.250 (suits to protect union labels).

scholars who agree upon the desirability of making trade unions amenable to actions as entities,[9] and cases from other states.[10]

We are indebted to both counsel for the high quality of their scholarship and for their candor in putting the question before the court. The case comes down to these fundamental questions:

(1) Should labor unions be subject to judicial proceedings as legal entities?

(2) If so, should this end be accomplished by judicial decision?

The first question presents no real problem. We have found no authority defending the old rule as applied to labor unions. Labor unions have come to be regarded by their members, by the courts, and by Congress as legal entities. The old notion that they were voluntary associations in the nature of a joint enterprise is now recognized as an historical curiosity. See, for a comprehensive statement of the modern view, *Marshall v. International Longshoremen's & Warehousemen's Union,* 57 Cal2d 781, 22 Cal Rptr 211, 371 P2d 987 (1962).

The United States Supreme Court in *United Mine Workers v. Coronado Co.,* 259 US 344, 42 S Ct 570, 66 L Ed 975, 27 ALR 762 (1922), first pointed the way.

[9] Oleck, *Non-Profit Associations as Legal Entities,* 13 Clev-Mar L Rev 350 (1964); Crane, *Liability of Unincorporated Association for Tortious Injury to a Member,* 16 Vand L Rev 319 (1963); Sturges, *Unincorporated Associations as Parties to Actions,* 33 Yale L J 383 (1924).

[10] Fray v. Amalgamated, etc., Local Union No. 248, 9 Wis2d 631, 101 NW2d 782 (1960) (union member suing own union for damages); Borden v. United Ass'n. of Journeymen & Apprentices, 316 SW2d 458 (Tex Civ App 1958); for conclusion of this litigation see Local 100 of United Ass'n of Journeymen, etc. v. Borden, 355 SW2d 729 (Tex Civ App 1962), reversed 373 US 690, 83 S Ct 1423, 10 L Ed2d 638 (1963).

While the case is not squarely in point, because it relies in part upon federal statutes, the opinion discusses the pros and cons of holding a union responsible as an entity under the Sherman Antitrust Act. The case holds that a union can be sued in the federal courts despite the absence of a specific statute so providing. Later, in *United States v. White*, 322 US 694, 64 S Ct 1248, 88 L Ed 1542, 152 ALR 1202 (1944), the same court elaborated, in connection with the privilege against self-incrimination:

> "Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity * * *. The union's existence in fact, and for some purposes in law, is as perpetual as that of any corporation, not being dependent upon the life of any member * * *." 322 US at 701-702.

If the matter were before us as a question of first impression, we would, without further discussion, hold that a labor union recognized as such for collective bargaining purposes can sue or be sued either in law or in equity.

■ The hard question is whether such a rule ought now to be declared judicially. In thirty-seven states, the briefs assert, the matter has been resolved by legislation. But we hold that the question in this state need not await legislative disposition. The old rule was a judge-made rule, and is subject to change by judicial decision within the tradition of the common law. *Hungerford v. Portland Sanitarium*, 235 Or 412, 384 P2d 1009 (1963). If the legislature should see the policy question in a different light, it is free to impose an infinite variety of qualifications, limitations, exceptions, and conditions upon the amenability of labor unions to actions at law.

The strongest argument against law reform by judicial decision is that when a state court changes substantive or procedural law its activity may tend to weaken representative government. See, e.g., Jefferson B. Fordham, *Judicial Policy Making at Legislative Expense,* 34 Geo Wash L Rev 829 (1966). Granting the undeniable force of the generality as a restraint upon judicial activism, it is equally true that if the generality were carried to its logical conclusion as an absolute prohibition, the common law would still be exactly what it was in colonial days when parliamentary government was in its infancy.

History teaches that courts as well as parliamentary bodies have always made policy decisions, and the real question is not whether courts should decide policy questions, but when and how they should do so. See Cornelius J. Peck, *The Role of the Courts and Legislatures in the Reform of Tort Law,* 48 Minn L Rev 265 (1963).

■ It is argued in the case at bar that because the Oregon Legislative Assembly has made provision for suits in equity against labor unions in a limited class of cases (hot cargo and secondary boycott), the Assembly has thus indicated the outer limits of the answerability of unions to legal process. We do not believe that such an inference necessarily, or even reasonably, should follow. It is much more likely that the Assembly rested after enacting statutes making unions answerable in injunction suits because that was all the relief that had been requested. Indeed, now that the Assembly has granted legislative recognition to the fact that unions are legal entities for certain equitable purposes, it is difficult to construct a logical basis for holding that they are not legal entities for the purpose of being sued at law for their torts.

 We hold that a labor union can be sued as a legal entity in an action at law for damages. We do so because of the structural and functional characteristics of collective bargaining organizations as *de facto* economic entities. We also recognize the differences between labor organizations on the one hand and an infinite variety of unincorporated fraternal, social, and community-service associations on the other hand. The latter are not necessarily to be treated as legal entities. No urgent reason for so treating them has been presented in this case, and the matter is not before us. As did the California court in *Marshall v. International Longshoremen's & Warehousemen's Union,* supra, we limit our holding to labor unions and leave for further development the law with reference to other types of unincorporated associations.

Let the writ of mandate issue directing the trial court to set aside its order quashing the service of summons, and let the action below proceed in the name and style in which it has been filed.

Demurrer to alternative writ overruled; peremptory writ allowed.