430 F.2d 1119
 HYATT CHALET MOTELS, INC., a California corporation, Robert W. Winter, Jr., and Katherina Winter, Appellants,
v.
CARPENTERS LOCAL 1065 and Laborers Local 441, Appellees.
REIMANN CONSTRUCTION CO., an Oregon corporation, Appellant,
v.
CARPENTERS LOCAL 1065 and Laborers Local 441, Appellees.
 No. 23211.
 No. 23212.
 United States Court of Appeals, Ninth Circuit.
 July 29, 1970.
 
 James H. Clarke (argued), Lewis K. Scott, of McColloch, Dezendorf & Spears, Portland, Or., for appellants.
 Donald S. Richardson (argued), of Green, Richardson, Griswold & Murphy; Paul T. Bailey, of Bailey, Swink & Haas, Portland, Or., for appellees.
 Before MERRILL and DUNIWAY, Circuit Judges, and BYRNE,* District Judge.
 BYRNE, District Judge:
 These cases are appeals from dismissals of suits for damages brought under Section 303 of the Labor Management Relations Act (29 U.S.C. § 187) providing relief for injuries caused by secondary boycotts.
 The district court granted a defense motion to dismiss under Rule 12(b) on the grounds that the actions were governed by the Oregon 2-year statute of limitations (ORS 12.110) applicable to "any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter".
 Appellants' contentions that the Oregon 6-year limitations period controls were rejected in the trial court. The 6-year section (ORS 12.080(2)) applies to actions "upon a liability created by statute, other than a penalty or forfeiture excepting those mentioned in ORS 12.110 (the 2-year statute)".
 The May 23rd and May 28th orders of dismissal noted that in each case the "complaint alleges a secondary boycott. Such action existed at common law and was therefore not created by statute". The 2-year limitations statute was therefore held to apply.
 The main issue on appeal is whether damage actions for secondary boycotts in Oregon brought under Taft-Hartley § 303 are controlled by the Oregon 2-year statute of limitations or by the 6-year statute applicable to "a liability created by statute."
 The appellants present an additional contention which will be discussed first. They claim that whatever the result on the statute of limitations issue, the District Court erred in dismissing the complaints because the bar of the statute did not appear on the face of the Hyatt complaint.
 Hyatt[1] relies on Suckow Borax Mines Consol. v. Borax Consolidated, 185 F.2d 196, 204 (CA 9 1950), and Steiner v. 20th Century Fox, 232 F.2d 190, 197 (CA 9 1956). Neither case supports the Hyatt position. In Suckow this court explained that
 "* * * affirmative defenses, even though not appearing on the face of the complaint, may be established upon motion to dismiss or for summary judgment when, by affidavits, depositions and admissions, a set of undisputed facts is revealed upon which the moving party is entitled to judgment as a matter of law."
 The Suckow case makes clear that there is no hidebound requirement that the statute of limitations defense must appear on the face of the complaint.
 In the Steiner case this court indicated that
 "Where on the face of the complaint the application of the statute of limitations is apparent, the complaint may properly be dismissed by an appropriate motion in advance of trial" (citing Suckow and others).
 Once again there was no statement in Steiner that specific allegations of time must be made on the face of the complaint.
 As to the main issue, Hyatt asserts that the suits here are governed by the 6-year statute because they seek to enforce rights "created by statute". Section 303 allegedly embodies an original substantive liability which completely pre-empts and displaces Oregon state law on secondary activity which violates the Taft-Hartley Act.
 The Unions claim that an action for damages caused by secondary boycotts existed for many years at Oregon common law so that Section 303 "simply provides certain `ground rules', including the procedure for actions to recover damages for illegal secondary activity".
 In adopting the Unions' position, the district court relied on Shelton v. Paris, 199 Or. 365, 261 P.2d 856, 858 (1953).
 The Shelton court noted that the test of
 "* * * `a liability created by statute' is whether or not `"* * * independent of the statute, the law implies an obligation to do that which the statute requires to be done, and whether, independently of the statute, the right of action exists for a breach of the duty or obligation imposed by the state." Wood, Lim. Act § 39', State v. Baker County, 24 Or. 141, 146, 33 P. 530, 531."
 Holding that Oregon common law always required the employer to pay damages to an employee for the employer's negligence, the Supreme Court of Oregon found that a state Employers' Liability Act created no new cause of action but "only a determination of the standard of care to be exercised by the employer toward his employee." Accordingly, the Oregon court applied the state's 2-year limitations period rather than the 6-year statute.
 The question of whether to apply any state statute of limitations period in the litigation of § 303 suits in federal court was resolved by this court in International Union of Operating Engineers, etc. v. Fischbach and Moore, Inc., 350 F.2d 936, 939 (CA 9 1965). In that case the court, after citing much case authority, held
 "* * * the statute itself, its legislative history, and the pressing weight of authority lead us to hold that California's three-year limitation statute should have been applied (rather than the equitable doctrine of laches)."
 The California limitations section involved in Fischbach was CCP § 338.1, which provides in part: "Within three years, (1) an action upon a liability created by statute, other than a penalty or forfeiture."
 Although Hyatt appears to be wrong in asserting that the California statute is "identical" with the Oregon section,[2] it is clear that this court in Fischbach treated § 303 rights as "created by statute" without an explicit holding on the question.
 An indication that the Fischbach court regarded § 303 rights as statutorily created is contained in the opinion's quotation of Justice Frankfurter in Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946):
 
 
 1
 "If Congress explicitly puts a limit upon time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive. (Citations omitted.) The rub comes when Congress is silent." (emphasis added)
 
 
 2
 The reason why Holmberg is only an indication of the court's assumptions about § 303 in Fischbach is that Holmberg was quoted only to support the Fischbach statement that "unlike the states, Congress has enacted no general federal statute of limitations". It is unclear that the Fischbach court meant to imply that an action under § 303 is actually an "action upon a liability created by statute".
 
 
 3
 That Section 303 does create a new cause of action was explicitly stated by this court in Schatte v. International Alliance, Etc., 182 F.2d 158, 165 (CA 9 1950).[3] There the court said:
 
 
 4
 "Section 303, even more explicitly than § 301, creates new substantive rights and liabilities, together with an appropriate remedy for their enforcement."
 
 
 5
 While not explicitly holding that Section 303 created "new substantive rights and liabilities", the Supreme Court in Local 20, Teamsters etc. Union v. Morton, 377 U.S. 252, 261, 84 S.Ct. 1253, 1259, 12 L.Ed.2d 280 (1963) held that damage actions for § 303 violations are in
 
 
 6
 "an area `of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law'. Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176, 63 S.Ct. 172, 87 L. Ed. 165. Accordingly, we hold that state law has been displaced by § 303 in private damage actions based on peaceful union secondary activities. * * *" (emphasis added)
 
 
 7
 Two questions arise in the wake of Morton: (1) are the § 303 rights displacing state law simply the "old" common law rights in a new guise and thus not created by statute as the district court found in our case? and (2) are there state rights still available for damages caused by violent union secondary activities?
 
 
 8
 Answering the second question first, the Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715, 721, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1965) held that in the case of violence and intimidation
 
 
 9
 "`We have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. (Citations)"
 
 
 10
 State remedies were thus not entirely pre-empted.
 
 
 11
 As to the first question, we need to examine the common law of Oregon and that of other states, and the relationships between the Oregon 2-year and 6-year statutes.
 
 
 12
 Hyatt contends on appeal that there are no reported Oregon cases allowing damage actions against labor unions for secondary boycotts.
 
 
 13
 Not conceding Hyatt's contention, the Unions present two Oregon cases to sustain their position that liability for secondary boycott damage did exist at common law.
 
 
 14
 In Longshore Printing & Pub. Co. v. Howell, 26 Or. 527, 38 P. 547 (1894) members and former members of a union executive committee[4] were made defendants in a suit for an injunction to prevent Longshore's employees from striking. The complaint in that case alleged that the defendants as individuals conspired to injure Longshore's property through a boycott, that the conspiracy existed "between the officers and members" of the union.
 
 
 15
 The Longshore court refused to issue the injunction since the plaintiff did not prove that his business was about to be destroyed.
 
 
 16
 About the case, the Unions state that the Longshore court "made it clear that it considered that damages could be recovered for an illegal boycott." This appears to be inaccurate. The only reference made to damages in the case was: "The plaintiff may have its action at law against defendants for some of the acts complained of. * * *" (38 P. 556). In view of the fact that the Longshore plaintiff complained of acts of criminal trespass, intimidation of its employees and other malicious acts, it cannot be said with any degree of certainty that "some of the acts" referred to the secondary boycott.
 
 
 17
 The other Oregon case on which the Unions rely is Moreland Theatres Corp. v. M. P. M. O. P. Union, 140 Or. 35, 12 P.2d 333 (1932)[5] in which there was no secondary activity at all. The case simply involved a suit for an injunction against primary picketing.
 
 
 18
 A careful survey of Oregon decisional law reveals that (1) as of 1920 a union could be sued as an entity under Oregon law as a defendant in a suit seeking an injunction. G. Heitkemper v. Central Labor Council, 99 Or. 1, 192 P. 765 (1920)[6] and (2) that after passage of the Oregon Anti-Injunction Act (ORS 662.010) unions could not be the subject of injunctions in union recognition cases. Peters v. Central Labor Council, 179 Or. 1, 169 P.2d 870 (1934). See also Gilbertson v. McLean, 216 Or. 629, 341 P.2d 139 (1959).
 
 
 19
 Although the Oregon decisions appear to be inconclusive on the subject, the Unions claim that non-Oregon decisions support their position. They cite the Supreme Court decision in Truax v. Corrigan, 257 U.S. 312, 327, 42 S.Ct. 124, 127, 66 L.Ed. 254 (1921) in which the Court held that "intentional injury caused to plaintiffs by a conspiracy is a tort." What weakens the Unions' case here is the Truax court's statement that in the case of peaceful secondary boycotts "courts have differed and states have adopted different statutory provisions" on the legality of those activities. Thus it appears that the common law right asserted to have been present did not actually exist with any great uniformity of acceptance. The two Missouri cases[7] cited by the Unions are not conclusive of a general common law right of action in cases of peaceful secondary boycotts.
 
 
 20
 Contrary to the holding of the district court, the Unions failed to prove that a common law right to damages for secondary boycotts existed in Oregon prior to the Taft-Hartley Act (also known as the "Labor Management Relations Act").
 
 
 21
 The last area of discussion involves the Unions' contention that if § 303 is considered to be "a liability created by statute", this court should recognize that the § 303 remedy is "also `for any injury to the person or rights of another'". The Unions then say that since § 303 could thus be contained within either the 2-year statute or the 6-year statute, or both, we must hold that § 303 is governed by the 2-year statute since the 6-year statute excepts those actions "mentioned in ORS 12.110 [the 2-year statute]".
 
 
 22
 As Hyatt points out, every statutory liability covers an "injury to the person or rights of another". Acceptance of the Unions' logic on this point would completely vitiate the 6-year statute.
 
 
 23
 The district court erred in disregarding this court's decision in Schatte v. International Alliance, Etc., supra. The orders of dismissal are set aside, and the cause remanded for further proceedings.
 
 
 
 Notes:
 
 
 *
 Honorable William M. Byrne, United States Senior District Judge, Central District of California, sitting by designation
 
 
 [1]
 The appellants will hereinafter be referred to as "Hyatt". Appellees will be called the "Unions"
 
 
 [2]
 The Oregon 6-year statute contains the additional exception for every cause of action expressed in the 2-year statute which includes injury to the rights of another
 
 
 [3]
 SinceSchatte a number of courts have applied its § 303 ruling. See United Brick & Clay Workers v. Deena Artware, Inc., 6 Cir., 198 F.2d 637, 640, cert. den. 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694, reh. den. 344 U.S. 919, 73 S.Ct. 346, 97 L.Ed. 708 (1952); Banner Mfg. Co. v. United Furn. Workers, D.C., 90 F.Supp. 723 (1950) and others cited by the appellants at page 12 of their brief.
 The Banner court applied Schatte and noted that the legislative history of sections 303 and 301 "would indicate that the then existing procedural difficulties in suing labor organizations in State and Federal courts was one of the main reasons for their enactment."
 
 
 [4]
 The Oregon court referred to the union itself as an "unincorporated voluntary association." It is uncertain whether a unionas an entity could be sued in Oregon in 1894. There appear to be no recorded cases in Oregon prior to the 1966 decision of Brawner v. Sanders, 244 Or. 302, 417 P.2d 1009 which hold that a labor union could be sued "as a legal entity in an action at law for damages."
 The Unions' suggestion that prior to the Brawner case there "is no reason to assume" that Oregon would not have recognized the labor union as a suable entity has little merit here. What we are concerned about is the question of whether a union could be sued as an entity in 1894. In light of the Brawner court's implementation of new doctrine it appears that an 1894 court would not have recognized the union as a separate entity.
 
 
 [5]
 It should be noted that theMoreland court in holding that the plaintiff had a right to conduct its business without interference by others relied on Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349 (1921). Duplex was disapproved in United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1940).
 
 
 [6]
 TheHeitkemper court issued an injunction against the union involved in a primary recognition strike. There was no evidence of unlawful secondary activity in the case.
 
 
 [7]
 In one case Lohse Patent Door v. Fuelle, 215 Mo. 421, 114 S.W. 997 (1908) the court simply ruled that a primary boycott was illegal. There was no suit for recovery of damages caused by any secondary boycott. Similarly in Oxley Stave Co. Coopers' Int'l Union, 72 F. 695 (Mo.1896) the court affirmed the granting of an injunction against a union in another primary boycott case. TheOxley court cited a number of decisions from other states and from federal courts to support its position that boycotts were illegal conspiracies (at 699). In none of the cases cited was there a holding that a plaintiff could sue for damages at law for injuries caused by secondary boycotts.
 
 
 DUNIWAY, Circuit Judge (concurring):
 
 24
 I concur. The proposition that, when Congress enacted section 303 (29 U.S.C. § 187), that statute created a liability, is to me so obvious as scarcely to be worth arguing. Subsection (a) makes it unlawful "for purposes of this section only," for a labor organization to engage in certain unfair labor practices. Subsection (b) gives a right of action to anyone "injured in his business or property by reason or [sic — of] any violation of subsection (a)." Nevertheless, I have some difficulty in reconciling the result that we reach with the rationale of the Supreme Court's opinion in International Union, United Automobile, etc. Workers v. Hoosier Cardinal Corporation, 1966, 383 U.S. 696, 703-708, 86 S.Ct. 1107, 16 L.Ed.2d 192, or with the rationale of our decision in Smith v. Cremins, 9 Cir., 1962, 308 F.2d 187, 189-190, in the light of the Oregon case of Shelton v. Paris, 1953, 199 Or. 365, 261 P.2d 856, or with the deference we usually extend to the views of a District Judge as to the law of the state in which he sits.
 
 
 25
 My reason for writing a separate opinion is not to state doubts as to whether my Brother Byrne's opinion is correct. Rather, I write to protest the fact that we must decide the question at all. We are in this judicial morass for one reason only; the Congress failed to do a complete job when it enacted section 303. It is clear that the purpose was to create federal duties and rights, which are the same in all states and which displace state law, at least in cases involving peaceful union activities. Local 20 Teamsters etc. Union v. Morton, 1964, 377 U.S. 252, 261, 84 S. Ct. 1253, 12 L.Ed.2d 280, quoted in my Brother Byrne's opinion. It matters not whether the action be filed in a federal court or in a state court. What possible reason, then, can there be for having the time within which an action under the statute must be brought vary according to the law of the state in which it is filed?
 
 
 26
 Even if it were held that, in every state having a special statute of limitation for actions upon a liability created by statute, such statute controls, there would be no uniformity. According to Blume & George, there were in 1951 only twenty-four such states, and their periods of limitation varied from one to twenty years. (Blume & George, Limitations and the Federal Courts, 49 Mich. L.Rev. 937, 967, n. 115 (1951).) What of the long periods? Is the state statute to be rejected in such states because the long period is inconsistent with the policy discerned in United Automobile Workers, supra, 383 U.S. at 707, 86 S. Ct. 1107, favoring relatively rapid disposition of labor disputes? There the court applied a six-year statute. How many more years is too many? And what of the other twenty-six states? As Blume & George show, the periods of limitation, whatever rubric be adopted, vary enormously among the states (id. at 966-74). What of tolling? Again, the variations among state laws are great (id. at 974 ff). Nor are these the only variables, as the cited article demonstrates. Moreover, there is another problem contributing to uncertainty: what state law governs, that of the forum state, that of the state where the events occurred, or some other? What of multistate transactions?
 
 
 27
 The courts have had to struggle with these problems, under various Acts of Congress, for years, and there is a formidable body of case law, the production of which has cost an enormous amount of time and effort and expense to litigants, their counsel, and the courts. It has produced a great body of ratiocination, full of subtleties and fine distinctions. See, for example, in addition to United Automobile Workers, supra; Moviecolor Ltd. v. Eastman Kodak Co., 2 Cir., 1961, 228 F.2d 80; Bertha Building Corp. v. National Theatres Corp., 2 Cir., 1959, 269 F.2d 785; Banana Distributors, Inc. v. United Fruit Co., 2 Cir., 1959, 269 F.2d 790; United Mine Workers v. Meadow Creek Coal Co., 6 Cir., 1959, 263 F.2d 52; Powell v. St. Louis Dairy Co., 8 Cir., 1960, 276 F.2d 464. See also Note, Federal Statutes Without Limitations Provisions, 53 Colum.L.Rev. 68 (1953); Note, A Limitation on Actions for Deprivation of Federal Rights, 68 Colum.L.Rev. 763 (1968); Comment, 76 Harv.L.Rev. 1306 (1963).
 
 
 28
 The federal courts are confronted by an ever-increasing workload. During the nearly 9 years that I have been a member of this court, our workload has increased by nearly 400%, our personnel by 44%. During the same period, Congress has created more than one new federal cause of action. And the number of cases based upon congressionally created causes of action, old and new, is growing geometrically. Yet there are few such congressional statutes that embody a statute of limitations. Every one that does not is a source of uncertainty as to what the applicable state law (if any) may be. Every one can be a producer of confusion, unnecessary work, and possible grave injustice to clients whose counsel made the wrong guess. Ideally, Congress should make a study of all federally created causes of action, and enact a comprehensive statute of limitations applicable to them. At the least, it should enact such a statute applicable to cases arising under sections 301 and 303 of the Labor Management Relations Act (29 U.S.C. §§ 185, 187). It took Congress forty years to get around to adopting a uniform statute of limitations for suits under section 4 of the Clayton Act (15 U.S.C. § 15) by the enactment of § 4B (15 U.S.C. § 15b). One has only to examine the annotations to 15 U.S.C.A. § 15b to see what a mess the law was in during those years. I fervently hope that Congress will now decide that the 23 years that have passed since the enactment of sections 301 and 303 of the Labor Management Relations Act are enough.