345 F.Supp. 950 (1972)
Donald TANNER, Plaintiff,
v.
PRESIDENTS-FIRST LADY SPA, INC., a Corporation and Richard L. Minns, Defendants.
No. 71 C 203(3).
United States District Court, E. D. Missouri, E. D.
June 15, 1972.
*951 *952 Rosecan & Popkin, St. Louis, Mo., for plaintiff.
Jim J. Shoemake, Guilfoil, Symington & Petzall, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
This matter is before the court on motion of defendant Presidents-First Lady Spa, Inc. to dismiss the cause of action as barred by applicable Missouri statutes of limitations. Plaintiff instituted this action to recover damages for libel and slander. Jurisdiction of the court is based upon 28 U.S.C. § 1332, diversity of citizenship with amount in controversy exceeding $10,000.
The complaint states a claim in defamation. The applicable Missouri Statute of Limitations is two years from publication. Section 516.140 R.S.Mo. (1969), V.A.M.S.
The complaint alleges the facts which follow and which must be taken as true for purposes of the motion to dismiss. Jenkins v. McKeithen, 395 U.S. 411, 421-422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Boddie v. Connecticut, 401 U.S. 371, 373, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).
Plaintiff, a California citizen, is an investor and has been a participant in the organization and operation of golf and various other types of membership clubs. Defendant Presidents-First Lady Spa, Inc., a Delaware corporation with its principal place of business in Houston, Texas is alleged to be the "successor in interest" to Presidents Health Club Spa of Clayton, Inc., and is alleged to maintain and operate health clubs through subsidiary corporations in the St. Louis area. Richard L. Minns is a citizen of the State of Texas. It is alleged that Presidents-First Lady Spa, Inc. and Minns have been engaged in the health club business since 1958.
The complaint alleges that in February, 1968 one George Shore, after surveying the St. Louis health club market, agreed with plaintiff and one Henry Kyle to open a health club in St. Louis County. Shore, Kyle and plaintiff agreed that each would have an equal interest in the health club which they planned to form. Shore selected property and a building owned by the Charles F. Vatterott Real Estate Company in St. Ann, Missouri as the location for the club. Shore, acting for himself, Kyle and plaintiff, agreed with the Vatterott Company for the lease of the property *953 and building. During the preparation of a formal written lease, the Vatterott Company made the building available to plaintiff and his associates so that they could begin selling memberships to the proposed health club. In the complaint plaintiff alleges that he took various steps at this time anticipating the commencement of business, such as preparing the building, hiring employees, running advertisements, printing up brochures and selling memberships.
It is alleged that defendants, upon learning that plaintiff and his associates were entering the St. Louis health club market, "undertook a campaign of villification of plaintiff and his associates, the purpose and effect of which was to exclude plaintiff and his associates from being able to enter the St. Louis health club market. . . ." Defendants are said to have contacted the Vatterott Real Estate Company, "and villified plaintiff and his associates' reputations as to honesty and reliability and falsely maligned and slandered plaintiff and his associates to the said Vatterott Real Estate Company." It is charged that defendants "invented rumors" that "plaintiff and his associates were dishonest, untrustworthy and would cheat health club members out of their money", and that this induced Vatterott Company not to lease the property to plaintiff and his associates. Plaintiff charges that on or about March 8, 1968 Vatterott Company refused to sign the formal lease of the property to plaintiff, Shore and Kyle as a direct result of defendants' conduct.
Plaintiff alleges that defendants "maligned, slandered and villified plaintiff and his associates to the advertising managers of the St. Louis Post Dispatch and the St. Louis Globe-Democrat", and that as a consequence, these two newspapers refused to accept advertising for the proposed health club. Plaintiff also charges that defendants "falsely maligned and slandered plaintiff" to representatives of the Better Business Bureau. Plaintiff seeks damages for the alleged injury to his "business, reputation and property" suffered from March, 1968, the time of the alleged libel and slander, to the time of the filing of the complaint.
Plaintiff commenced this action on April 2, 1971, more than three years after March, 1968. Section 516.140 R.S. Mo. (1969) in pertinent part provides:
"Within two years: An action for libel, slander, assault, battery, false imprisonment or criminal conversation. All actions against physicians, surgeons, dentists, roentgenologists, nurses, hospitals and sanitariums for damages for malpractice, error, or mistake shall be brought within two years from the date of the act of neglect complained of. . . ."
Plaintiff recognizes that under Missouri law that an action for libel or slander must be commenced within two years of the defamatory publication, but states that from May 12, 1969 until April 2, 1971, the day upon which he commenced the instant suit, an action instituted by him against the defendants herein was pending in this court, causing the statute of limitations to be tolled. It is defendant's contention that the statute of limitations was not tolled by Section 516.230 R.S.Mo. (1969)[1], V. A.M.S., and Fed.R.Civ.P. 3[2] while plaintiff's prior suit, Cause No. 69 C 148(1), was pending in this court. Defendant presents two arguments in support of this position: 1) plaintiff's prior suit, Cause No. 69 C 148(1), was not an action *954 for libel and slander and thus did not fall within the savings provisions of § 516.230, and 2) plaintiff failed to take any steps to obtain personal jurisdiction over Presidents-First Lady Spa, Inc. and Richard L. Minns in Cause No. 69 C 148(1) and as a consequence the statute of limitations continued to run even after the complaint in that action was filed.
As noted by defendant, the defense of limitations may be raised by motion to dismiss where the complaint shows on its face that the action has not been instituted within the limitations period and it is apparent that there is no genuine factual controversy surrounding the question of the availability of the defense. Rohner v. Union Pacific Railroad Company, 225 F.2d 272, 274 (10th Cir. 1955); Hyatt Chalet Motels, Inc. v. Carpenters Local 1065, 430 F.2d 1119, 1120 (9th Cir. 1970); Rose Barge Line, Inc. v. Hicks, 421 F.2d 163 (8th Cir. 1970); Schaefer v. United States, 288 F.Supp. 93 (E.D.Mo.1968); 5 Wright & Miller, Federal Practice and Procedure: Civil § 1277, at 332 (1969). As noted by plaintiff, for purposes of a motion to dismiss, the court may take judicial notice of its own records of proceedings. See Kithcart v. Metropolitan Life Ins. Co., 62 F.Supp. 93, 94 (W.D. Mo.1944), aff'd 150 F.2d 997 (8th Cir.), cert. denied 326 U.S. 777, 66 S.Ct. 267, 90 L.Ed. 470 (1945). Since matters outside the pleadings have been presented and not excluded by the court, defendant's motion to dismiss must be treated as a motion for summary judgment. Fed.R.Civ.P. 12(b). The parties have been given notice that the motion would be treated as one for summary judgment and have been given a reasonable opportunity to present all material made pertinent to a motion for summary judgment by Fed.R.Civ.P. 56.
The first prong of defendant's argument the contention that this suit is not a "new action" filed "within one year after [a prior] nonsuit"must be ruled against defendant.
The court's records show that on May 12, 1969 plaintiff filed a complaint seeking damages from Presidents-First Lady Spa, Inc., Cause No. 69 C 148(1). The complaint contained two counts. Count I charged Presidents-First Lady Spa, Inc. with several violations of certain provisions of the Sherman Anti-Trust Act, specifically, 15 U.S.C. §§ 1, 2. Count II charged Presidents-First Lady Spa, Inc. with tortious interference with plaintiff's business relationships with Charles Vatterott Real Estate Company, the St. Louis Globe-Democrat and the St. Louis Post Dispatch. On September 5, 1969, within two years of the defamatory publications alleged in the instant case, plaintiff filed an amended complaint, which added Richard L. Minns and President's Health Club Spa of Clayton, Inc. as parties defendant. The amended complaint was also in two counts. Count I charged defendants Presidents-First Lady Spa, Inc., President's Health Club Spa of Clayton, Inc. and Richard L. Minns with violations of 15 U.S.C. §§ 1, 2 and Count II charged the three defendants with tortious interference with plaintiff's business relationships. On April 2, 1971 with leave of court, plaintiff dismissed Cause No. 69 C 148(1) without prejudice. This was the same date on which he commenced the present suit.
Defendant here argues that plaintiff's first action, in claiming violation of the Sherman Act and tortious interference with business relationships, was different from the cause of action for libel and slander pleaded in the instant suit. Defendant contends that § 516.230 does not apply to permit plaintiff to commence this action within one year of suffering a nonsuit in Cause No. 69 C 148(1).
Voluntary dismissal of an action is a "nonsuit" within the meaning of § 516.230. Turner v. Missouri-Kansas-Texas R. Co., 346 Mo. 28, 142 S.W.2d 455, 459 (Mo.1940). In determining for purposes of § 516.230 whether the cause of action pleaded in a second suit is the same as that alleged in the first, the same tests are applied as are used in determining whether a pleading is an *955 amendment or a departure. Halloran v. Hackmann, 160 S.W.2d 769, 771 (Mo. 1942); Thomas v. Sterling Finance Co., 180 S.W.2d 788, 790 (Mo.App.1944); State ex rel. and to Use of Blackburn Motor Co. v. Litzinger, 417 S.W.2d 126, 129 (Mo.App.1967). A "departure" is a change of the cause of action by a subsequent pleading in the same cause of action. Halloran v. Hackmann, supra, 160 S.W.2d at p. 771. For a second action to come within the contemplation of § 516.230, it must unquestionably embody the issues set forth in the original action, i. e., the subject-matter must be the same, but it is not necessary that the legal theory be identical. Thomas v. Sterling Finance Co., supra, 180 S.W.2d at p. 790.
The complaints in Cause No. 69 C 148(1) allege that defendants "villified", "falsely maligned" and "slandered" plaintiff in statements made to the Vatterott Company, the St. Louis Post Dispatch, the St. Louis Globe-Democrat and representatives of the Better Business Bureau. Such defamation was alleged to have caused the Vatterott Company to renege on its agreement to lease property to plaintiff and his associates, to have caused the St. Louis Post Dispatch and the St. Louis Globe-Democrat to refuse to accept advertising for the health club, and to have caused the Better Business Bureau to impose "arbitrary advertising standards" on plaintiff and his associates. A comparison of the complaint in this case and the complaints in Cause No. 69 C 148(1) convinces the court that the subject-matter, issues and cause of action pleaded in both cases is the same and that this suit on its face is authorized by § 516.230.
Having determined that the filing of this action under Section 516.230 R.S. Mo. (1969), V.A.M.S., was not precluded on subject-matter grounds, we next inquire whether any applicable Rule, state or federal, may operate to defeat the apparent tolling effect of Section 516.230.
Service of the original complaint. A Marshal's Return of Service in Cause No. 69 C 148(1) shows that a copy of the original complaint and summons were served on "Sid Hester, Manager, at 200 S. Brentwood, Clayton, Missouri on 5-19-69." In the memorandum filed in opposition to defendant's motion to dismiss in this case, plaintiff states that he attempted to obtain service on Presidents-First Lady Spa, Inc. through Hester in his capacity as manager of President's Health Club Spa of Clayton, Inc. on the ground that as a matter of law, President's Health Club Spa of Clayton, Inc. was "but one of a corporate enterprise of Presidents Health Spas, and further that this corporation [President's Health Club Spa of Clayton, Inc.] was the alter ego or mere instrumentality of Richard L. Minns." The record in 69 C 148(1) shows that on June 9, 1969 defendant Presidents-First Lady Spa, Inc. filed a motion to dismiss or, in the alternative, to quash service for the reason that it had not been properly served with process either under the Federal Rules of Civil Procedure or under Missouri law. Attached to the motions to dismiss and quash were the affidavits of Sid Hester and a Jimmie D. LaHaye.
In his affidavit LaHaye stated that he was the Vice President of Presidents-First Lady Spa, Inc.; that Presidents-First Lady had never qualified to do business in the State of Missouri, had no place of business in Missouri and did not transact business in the State; that it had no bank account in Missouri; that it was not listed in any Missouri telephone or office directory; that it had no agent for service of process, no registered office and had not appointed anyone to accept service of process for it in the State of Missouri. In his affidavit Sid Hester stated that he resided at 200 South Brentwood, Clayton, Missouri; that he was the manager and an employee of the President's Health Club Spa of Clayton, Inc.; that service on Presidents-First Lady Spa, Inc. was attempted by serving him at 200 South Brentwood; that he was not an officer, managing or general agent, employee or director of Presidents-First Lady Spa, *956 Inc.; that he was not authorized by Presidents-First Lady Spa, Inc. to receive service of process; and that he and other employees of President's Health Club Spa of Clayton, Inc. were paid by checks drawn on a bank account maintained in Clayton, Missouri in the name of President's Health Club Spa of Clayton, Inc.
Also attached to the motions to dismiss and quash was the certification of the Secretary of the State of Missouri, dated June 4, 1969, to the effect that there were no records in his office showing that Presidents-First Lady Spa, Inc. was then or had ever been registered in his office as a domestic or foreign corporation, or filed under the Fictitious Name Act. The Missouri Secretary of State also certified that President's Health Club Spa of Clayton, Inc. was incorporated under the laws of Missouri on December 9, 1964 and had fully complied with all the requirements of the office of the Secretary of State. The office of the Secretary of State of the State of Delaware certified that Presidents-First Lady Spa, Inc. was duly incorporated on December 3, 1968 under the laws of Delaware.
The file in Cause No. 69 C 148(1) contains the deposition of Richard L. Minns, which was taken on August 22, 1969 for the purpose of eliciting evidence related to jurisdiction and venue. Counsel representing the parties in the instant suit were present and questioned Minns. Minns testified that he had been instrumental in forming twenty-four health clubs and spas in various cities in several states. He testified that he organized ten clubs in Houston, Texas, eight in Dallas, four in the St. Louis area, one in Phoenix, Arizona, and one in Oklahoma. Minns stated that each club was organized as a separate corporation, that he served on each corporation's board of directors as President, and until December, 1968, he owned stock in each. He stated that a few other persons also served on the boards of several corporations. Minns testified that each of the twenty-four corporations held separate, formal directors' meetings.
Minns testified that Presidents-First Lady Spa, Inc. is a publicly held corporation which was formed in December, 1968, becoming the sole owner of the shares of the other twenty-four corporations. Minns testified that at the time of his deposition, he owned 560,000, or roughly 56%, of the one million shares of Presidents-First Lady Spa, Inc. issued and outstanding. Minns also testified that the board of directors of each corporation was responsible for decisions by such corporation; that, as president, he was responsible to the board; and that he never made decisions regarding the operations of the corporations himself, but only made recommendations to a board which either adopted or rejected his suggestions. Minns testified that at all times as president, he would yield to the will of the various boards of directors.
From the uncontroverted evidence submitted in support of the motion to dismiss or quash, it is clear that the court in Cause No. 69 C 148(1) did not acquire personal jurisdiction over Presidents-First Lady Spa, Inc. or Richard L. Minns by service of process on Sid Hester. The doing business of a subsidiary corporation in a state does not without more confer jurisdiction over a nonresident parent corporation. Peterson v. U-Haul Co., 409 F.2d 1174, 1184, modified 421 F.2d 837 (8th Cir. 1969). There is no evidence before the court which would support a conclusion that President's Health Club Spa of Clayton, Inc. and Presidents-First Lady Spa, Inc. were not distinct corporate entities. There is no indication that an agency relationship existed between the two corporations. See 4 Wright & Miller, Federal Practice and Procedure: Civil § 1069, at 255-257; 2 J. Moore, Federal Practice ¶ 4.25 [6], at 1174. There is also no evidence that Minns was using the corporate form of President's Health Club Spa of Clayton, Inc. for the conduct of his own personal activities in the St. Louis area. 4 Wright *957 & Miller, Federal Practice and Procedure § 1069, at 14 (Supp.1971).
Service of the amended complaint. As noted, supra, plaintiff's amended complaint in Cause No. 69 C 148(1), which added Richard L. Minns and President's Health Club Spa of Clayton, Inc. as defendants, was filed on September 5, 1969. Summons was issued on the same date. In the amended complaint, plaintiff requested that summons issue on Richard L. Minns and Presidents-First Lady Spa, Inc. pursuant to the Missouri Long Arm Statutes, § 506.500 et seq., R.S.Mo., as authorized by Federal Rules 4(d) (7) and 4(e). In effect, these rules require a federal district court to look to the laws of the forum state in resolving questions concerning extraterritorial service of process. Thill Securities Corporation v. New York Stock Exchange, 283 F.Supp. 239, 242 (E.D.Wis. 1968); Jack O'Donnell Chevrolet, Inc. v. Shankles, 276 F.Supp. 998, 1000-1001 (N.D.Ill.1967); McKee v. Anderson, 272 F.Supp. 684, 686 (W.D.Mo.1967).
Section 506.510 in pertinent part provides:
"1. Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in section 506.500, may be made by personally serving the process upon the defendant outside this state, or upon a corporation by serving the process upon a managing officer or any person or corporation who shall be designated as a registered agent by such corporation in any of the several states, and shall have the same force and effect as though the process had been served within this state."
Marshal's Returns show that President's Health Club Spa of Clayton, Inc. was properly served with summons and a copy of the amended complaint by service on its registered agent on September 11, 1969. (Fed.R.Civ.P. 4(d) (3)). Thereafter, on February 3, 1970, on praecipe filed by plaintiff, additional summons on the amended complaint were issued to defendants Presidents-First Lady Spa, Inc. and Richard L. Minns. A Marshal's Return filed February 5, 1970 shows that on January 28, 1970 service of Minns with the process issued on September 5, 1969 was attempted by leaving a "copy of summons with a copy of the complaint attached, at 11408 Memorial Dr., Houston, Texas, his dwelling house or usual place of abode, with Mrs. Richard L. Minns, a person of suitable age and discretion, then residing therein." Process issued on February 3, 1970 was returned unexecuted on defendant Minns on instructions of plaintiff's attorney. A Marshal's Return filed August 5, 1970 shows that on July 30, 1970 service of process issued on February 3, 1970 was attempted on Presidents-First Lady Spa, Inc. "by delivering copy of summons with copy of complaint attached by delivering copy to Gayle Simmons Receptionist at 7500 Clarewood, Houston, Texas."
On August 20, 1970 Presidents-First Lady Spa, Inc. filed a motion to quash service due to insufficiency of process, asserting that leaving the summons and the amended complaint with a receptionist did not satisfy § 506.510. Richard L. Minns also filed a motion to quash for the reason that § 506.510 requires that an individual defendant be personally served, and delivery of process to his wife was insufficient. Attached to the motion of Presidents-First Lady was the affidavit of a Gaye Webb[3], who stated that she was the receptionist for the Presidents-First Lady Spa, Inc. in Houston, Texas, and that on July 30, 1970 a Deputy United States Marshal from the Southern District of Texas came to the corporation's office with a summons in 69 C 148(1) and asked for an officer of the company. Her affidavit states that she informed *958 him that none of the officers of the company were in, that he waited for approximately five minutes and then handed her the summons. Miss Webb stated that she told the Deputy Marshal that she has no authority to receive a summons for the company, but he insisted that she take it anyway.
From the record in Cause No. 69 C 148(1) it is clear that service of Richard L. Minns and of Presidents-First Lady Spa, Inc. on the amended complaint did not comply with the provisions of § 506.510. Minns was not personally served, and process was not delivered to a managing officer of Presidents-First Lady Spa, Inc. or any person designated by it as a registered agent. Under Missouri law service of process is wholly a statutory matter. Missouri courts have stated that generally unless a defendant is served with process or summoned in some manner authorized by statutory law, the court is without authority to proceed. State ex rel. Minihan v. Aronson, 350 Mo. 309, 165 S.W.2d 404, 407 (1942); State ex rel. Kissinger v. Allison, 328 S.W.2d 952, 958 (Mo. App.1959).
Conclusion on Service of Process. Based upon the uncontradicted evidence contained in the court files, the court finds and concludes that proper service was never obtained by plaintiff on Richard L. Minns or Presidents-First Lady Spa, Inc. in Cause No. 69 C 148(1) and that the court never acquired personal jurisdiction over these parties in that case.
Effect of Failure to Acquire Personal Jurisdiction of Defendants in Cause No. 69 C 148(1) on Tolling the Statute of Limitations.
Applicable Law. In the memorandum filed in opposition to defendant's motion to dismiss, plaintiff concedes that defendants Richard L. Minns and Presidents-First Lady Spa, Inc. were not properly served in Cause No. 69 C 148(1). He maintains that commencement of Cause No. 69 C 148(1) "without obtaining service of process on the defendants herein or, without using due diligence to see that process [was] served on the defendants [was] sufficient to toll the statute of limitations." Plaintiff argues that Fed.R.Civ.P. 3 contemplates that the filing of the complaint in and of itself is sufficient to toll the statute of limitations. In support of this position, plaintiff cites Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), where the Supreme Court held that in a civil action brought in federal court, where subject-matter jurisdiction is based upon diversity of citizenship, service of process shall be made in the manner set forth in Fed.R.Civ.P. 4(d) (1) rather than in the manner prescribed by state law. Plaintiff argues: "It is unquestionable that Hanna signals the supremacy of the Federal Rules. Accordingly, the commencement of plaintiff's claim is governed by Rule 3 of the Federal Rules of Civil Procedure. . . . It follows, therefore, that plaintiff's action [in Cause No. 69 C 148(1)] was commenced and the statute of limitations was tolled when plaintiff filed his Amended Complaint. . . ."
The lower federal courts are divided as to whether the Supreme Court's decision in Hanna v. Plumer overruled its earlier decision in Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). Ragan was an action for damages for injuries sustained in a highway accident in Kansas. Suit was instituted in federal court with jurisdiction based upon diversity of citizenship. The applicable Kansas statute of limitations was two years. The accident had occurred less than two years before the complaint was filed, but the summons was not served until more than two years after the date of the accident. The complaint was filed and summons issued in accordance with Federal Rule 3, which provides that a civil action is commenced by filing a complaint with the court. Kansas had a statute specifically providing that an action should be deemed commenced at the time the summons was served. The Supreme *959 Court held on the basis of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079 (1945) that the action was barred by the statute of limitations despite compliance with Federal Rule 3. In the course of its opinion the court stated:
"Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, was premised on the theory that in diversity cases the rights enjoyed under local law should not vary because enforcement of those rights was sought in the federal court rather than in the state court. If recovery could not be had in the state court, it should be denied in the federal court. Otherwise, those authorized to invoke the diversity jurisdiction would gain advantages over those confined to state courts. Guaranty Trust Co. [of New York] v. York applied that principle to statutes of limitations on the theory that, where one is barred from recovery in the state court, he should likewise be barred in the federal court.
It is conceded that if the present case were in a Kansas court it would be barred. The theory of Guaranty Trust Co. [of New York] v. York would therefore seem to bar it in the federal court, as the Court of Appeals held. The force of that reasoning is sought to be avoided by the argument that the Federal Rules of Civil Procedure determine the manner in which an action is commenced in the federal courtsa matter of procedure which the principle of Erie R. Co. v. Tompkins does not control. It is accordingly argued that since the suit was properly commenced in the federal court before the Kansas statute of limitations ran, it tolled the statute.
That was the reasoning and result in Bomar v. Keyes, 2 Cir., 162 F.2d 136, 141. But that case was a suit to enforce rights under a federal statute. Here, as in that case, there can be no doubt that the suit was properly commenced in the federal court. But in the present case we look to local law to find the cause of action on which suit is brought. Since that cause of action is created by local law, the measure of it is to be found only in local law. It carries the same burden and is subject to the same defenses in the federal court as in the state court. . . . . It accrues and comes to an end when local law so declares. . . . Where local law qualifies or abridges it, the federal court must follow suit. Otherwise there is a different measure of the cause of action in one court than in the other, and the principle of Erie R. Co. v. Tompkins is transgressed.
We can draw no distinction in this case because local law brought the cause of action to an end after, rather than before, suit was started in the federal court. In both cases local law created the right which the federal court was asked to enforce. In both cases local law undertook to determine the life of the cause of action. We cannot give it longer life in the federal court than it would have had in the state court without adding something to the cause of action. We may not do that consistently with Erie R. Co. v. Tompkins." (337 U.S. 530, 532-534, 69 S.Ct. 1233, 1234, 93 L.Ed. 1520).
Some of the lower federal courts have held that Ragan is no longer "good law" since Hanna. E. g. see cases cited in 2 J. Moore, Federal Practice ¶ 3.07 [4.-1], 32-33 n. 1 (Supp.1971). However, the United States Court of Appeals for the Eighth Circuit has held that "the majority of the Supreme Court, in supporting the opinion written by the Chief Justice felt that it was not an overruling of Ragan." Groninger v. Davison, 364 F.2d 638, 642 (8th Cir. 1966). Under the rule in this circuit, the federal courts in diversity suits must continue to look to state law to determine when an action is commenced. Mayo Clinic v. Kaiser, 383 F.2d 653, 656 (8th Cir. 1967). It appears for purposes *960 of any rights plaintiff might have under the Sherman Anti-Trust Act that the controlling federal statute of limitations was tolled by commencement of Cause No. 69 C 148(1) in accordance with Federal Rule 3. Moore Company of Sikeston, Missouri v. Sid Richardson Carbon & Gasoline Company, 347 F.2d 921, 922 (8th Cir. 1965), cert. denied 383 U.S. 925, 86 S.Ct. 927, 15 L.Ed.2d 845 (1966). However, the instant action is a diversity suit brought under state substantive law and governed by a state statute of limitations. This court must look to state law to determine if the statute of limitations governing actions for libel and slander was tolled by the commencement of Cause No. 69 C 148(1). Ragan v. Merchants Transfer & Warehouse Co., supra; Groninger v. Davison, supra; Mayo Clinic v. Kaiser, supra.
Missouri law. In Missouri the filing of a petition or a complaint and the issuance of summons is but a conditional halting of the statute of limitations, and unless a plaintiff thereafter exercises due diligence in obtaining service of process, the statute continues to run. Hennis v. Tucker, 447 S.W.2d 580, 583 (Mo.App.1969); Emanuel v. Richards, 426 S.W.2d 716, 718 (Mo.App. 1968). Whether claims are prosecuted diligently must be decided on a case by case basis. Hennis v. Tucker, supra at pp. 583-584.
In Mayne v. Jacob Michel Real Estate Co., 237 Mo.App. 952, 180 S.W.2d 809 (1944), the court stated:
"Such is the tenor of all the cases that have been brought to our attention. The cases differ somewhat with respect to the course of reasoning adopted, but they all proceed upon the same underlying principle and arrive at the same result. They all manifest the same unwillingness to permit the period of limitation to be prolonged by the failure of the plaintiff to make diligent use of the means provided by law for obtaining jurisdiction of the defendant." 180 S.W.2d 809, 812.
In Continental Electric Company v. Ebco, Incorporated, 375 S.W.2d 134 (Mo. 1964), the court stated:
"We are of the opinion that, under these cases relied upon by respondent, appellant's unexcused neglect for a period in excess of the period of limitation to cause process to be issued which would confer upon the court jurisdiction of an essential party is fatal to the maintenance of the action to enforce the lien. If prompt determination of the lien claim is to be achieved, and such is the obvious purpose of the short limitation period, there can be no reason to accord to the party bringing the suit a period of time for obtaining process which exceeds the time within which he is required to sue. As pointed out in the Mayne and Driscoll [Driscoll v. Konze, Mo., 322 S.W.2d 824] cases, the plaintiff may not by such device extend the period of limitation on the cause of action. The effect of such delay is to cause the period of limitations to continue to run, despite the filing of the suit." 375 S.W.2d 134, 139.
Mertens v. McMahon, 115 S.W.2d 180 (Mo.App.1938) was an action originally brought by the appellant in the St. Louis Circuit Court to recover for work and labor done and tools and materials furnished by him at the respondent's request. A jury trial resulted in a plaintiff's verdict, however, the trial court sustained defendant's motion for a new trial and the plaintiff appealed to the St. Louis Court of Appeals. Plaintiff's cause of action had arisen in 1922 and his petition was filed in the St. Louis Circuit Court on June 20, 1934, beyond the applicable five year statute of limitations. Plaintiff had filed a prior suit in the Circuit Court of Gasconade County on September 16, 1925. The sole question presented by the appeal from the St. Louis Circuit Court was whether the prior filing in Gasconade County tolled the statute of limitations. The earlier cause had been tried before a jury and had resulted in a verdict for plaintiff. On Appeal the Missouri Supreme *961 Court held that the service that had been obtained on defendant was not legal. The judgment was reversed and the cause was remanded to be tried only on legal service being had on defendant. The cause was subsequently dismissed by the Circuit Court of Gasconade County for want of prosecution. Addressing itself to the question of whether the Gasconade County suit had tolled the statute of limitations, the Court of Appeals stated:
"We think it is clear that, there having been no valid process in the suit relied on by plaintiff herein, and hence no jurisdiction in the circuit court of Gasconade county, plaintiff did not, by filing that suit, stop the running of the statute of limitations against his alleged cause of action. That court did not have jurisdiction and never did acquire jurisdiction over the defendant and was, therefore, never in a position to try that cause. That cause having been dismissed without the court ever having acquired jurisdiction, the legal situation is the same as though that suit was never filed." 115 S.W.2d 180, 183.
Application of Missouri Law to the Present Case. Missouri's due diligence rule is applicable to this case to determine whether commencement of Cause No. 69 C 148(1) tolled the statute of limitations. Mayo Clinic v. Kaiser, supra, 383 F.2d at p. 656; Smith v. Skakel, 444 F.2d 526, 527 (6th Cir. 1971); Murphy v. Citizens Bank of Clovis, 244 F.2d 511, 512 (6th Cir. 1957). Cause No. 69 C 148(1) was pending in this court almost two years, during which time personal jurisdiction was never acquired over Richard L. Minns or Presidents-First Lady Spa, Inc. The court's records in Cause No. 69 C 148(1) show a delay of almost five months between the date the amended complaint was filed and the attempted service on Minns, and a delay of almost six months between the date summons on Presidents-First Lady Spa, Inc. was first issued and the date further process was issued on plaintiff's praecipe. Plaintiff has presented no explanation for this delay. In fact, as noted supra, in the memorandum filed in opposition to defendant's motion to dismiss, plaintiff appears to concede that he did not use due diligence in obtaining service of process on Presidents-First Lady Spa, Inc. or Minns in the earlier action. The Marshal's Returns filed on February 5, 1970 and August 5, 1970 show that the attempted service on Minns and Presidents-First Lady Spa, Inc. did not comply with the requirements of § 506.510, yet plaintiff took no action to try to effectuate proper service of process between the time these returns were filed and the date he dismissed the action, April 2, 1971. Plaintiff's cause of action accrued in March, 1968, more than three years before he instituted the present action on which there is a two year statute of limitations. The language quoted supra from Mayne v. Jacob Michel Real Estate Co. and Continental Electric Company v. Ebco, Incorporated shows that the purpose of Missouri's due diligence rule is to prevent such extensions of limitations periods. The court finds that plaintiff's unexplained delay in failing to obtain personal jurisdiction over Presidents-First Lady Spa, Inc. and Richard L. Minns during the twenty-three months Cause No. 69 C 148(1) was pending in this court constituted a lack of due diligence in the prosecution of that suit.
Considerations of due diligence aside, the court also finds that the present action is barred under the rule of Mertens v. McMahon, supra. There was no valid process and personal jurisdiction was never acquired over Richard L. Minns or Presidents-First Lady Spa, Inc. The "court did not have jurisdiction and never did acquire jurisdiction over the defendant and was, therefore, never in a position to try that cause. That cause having been dismissed without the court ever having acquired jurisdiction, the legal situation is the same as though that suit was never filed." (115 S.W.2d 180, 183).

*962 Conclusion

Based on the foregoing, the court finds and concludes that there is no genuine issue as to any material fact and that defendant is entitled to summary judgment as a matter of law for the reason that this action is barred by the statute of limitations. Summary judgment will be entered for defendant accordingly.
In view of the court's disposition on defendant's motion to dismiss, it is unnecessary to consider other motions filed by defendant.
NOTES
[1] Section 516.230 in pertinent part provides:

"If any action shall have been commenced within the times respectively prescribed in sections 516.010 to 516.370, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed; . . ."
[2] Fed.R.Civ.P. 3 provides: "A civil action is commenced by filing a complaint with the court."
[3] It may be noted that the affidavit of Gaye Webb indicates that it was she who received process and not "Gayle Simmons" as stated in the return. However, plaintiff does not contest the statements in her affidavit and does not dispute a receptionist received the process.