515 P.2d 561

**S. H. KRESS & COMPANY, a corporation,**
**Plaintiff-Appellant,**

v.

**William C. GODMAN and Arneta Godman,**
**doing business as Gate City Plumbing and**
**Heating, Defendants-Respondents.**

No. 11005.

Supreme Court of Idaho.

Oct. 23, 1973.

Stanley E. Gardner, Merrill & Merrill, Pocatello, for plaintiff-appellant.

L. F. Racine, Jr., Racine, Huntley, Herzog & Olson, Pocatello, for defendants-respondents.

McFADDEN, Justice.

This appeal arises out of an action instituted by S. H. Kress & Company, plaintiff-appellant. In its complaint appellant alleged the negligent repair of a boiler by Gate City Plumbing and Heating, respondent, and that as a consequence of the alleged negligent repair the boiler exploded causing extensive property and inventory damage to the appellant. On Saturday, April 29, 1967, Robert Noll, appellant's store manager in Pocatello, Idaho, found the store cold and discovered the boiler's fire was out. He attempted to start the fire but failed. Then he called respondents, explained the problem to William C. Godman, owner of Gate City Plumbing and Heating, and requested a repairman. Godman responded that a repairman would be available on the following Monday.

On Monday, May 1, 1967, Cleo Smith, respondents' repairman, arrived, having been instructed by Godman to start the boiler fire. Noll explained to Smith that the boiler was not firing and that he did not know the nature of the problem. Noll then showed Smith the location of the "main water" valve and the boiler room. While examining the boiler, Smith checked the water level and found it "just right." Then he discovered the water feeder, which supplied the water to the boiler, was leaking inside and outside the boiler. He repaired the leak by installing a new gasket in the water feeder. Next, Smith found the electrical switch controlling the gas flow into the boiler turned off. After he turned it on, the boiler fire started. After watching the boiler go through its heating cycle for approximately thirty minutes, Smith .went upstairs and replaced a radiator vent. He returned to the boiler room for his tools and checked the boiler again. During this period of time the boiler operated without any difficulty. Before leaving appellant's store Smith advised Noll to watch the water and pressure gauges on the boiler. Smith left around 9:30 a. m.

Around 11:00 a. m., on the same morning, appellant's manager, Noll, went down to the boiler room and found the boiler's water and pressure normal. He returned upstairs and went to his balcony office. Shortly afterward, around 11:30 a. m. the boiler exploded causing extensive damage to appellant's store and inventory; fortunately, employees and customers escaped injury.

As a result of the damage the appellant brought an action against Gate City Plumbing alleging negligent repair of the boiler as the cause of the explosion. The appellants sought $67,553.93 for the damage to the building, for the loss of inventory, and for other claims arising out of the explosion. After a jury was empaneled and the appellant presented all its evidence concerning negligence on the part of the respondents, respondents moved for an in-voluntary dismissal of the action stating that the appellant had failed to establish a prima facie case showing that the cause of the explosion was in any way attributable to a breach of duty by the respondents. In granting the motion for involuntary dismissal the trial court stated that there was no evidence of respondents' duty to discover or to repair the particular piece of equipment which malfunctioned. The trial court on May 21, 1971, entered a judgment of non-suit dismissing the appellant's action with prejudice. The appellant appealed from this judgment of non-suit.

In challenging the trial court's dismissal of its complaint the appellant has raised two issues: one concerning the scope of respondents' duty in repairing the boiler and the other, the applicability of the doctrine of *res ipsa loquitur*. Any involuntary dismissal may be granted by the court in a jury trial only after it considers all the evidence and inferences arising therefrom in the light most favorable to the plaintiff. Highbarger v. Thornock, 94 Idaho 829, 498 P.2d 1302 (1972). Consequently, "[w]here there is substantial competent evidence tending to establish plaintiff's case, or where reasonable minds may differ as to the conclusion to be reached therefrom, the cause should be submitted to the jury." Petersen v. Parry, 92 Idaho 647, 651, 448 P.2d 653, 657 (1968).

In considering appellant's first contention, i. e., the scope of respondents' duty in repairing the boiler, it is necessary to consider, on the basis of the record, what each party expected to be done as the result of respondents' service call. Appellant's store manager, Mr. Noll, testified that on Saturday morning he spoke to Mr. Godman by telephone, and stated

"I told him that we didn't have any heat in the building and didn't know what was wrong with the furnace, could somebody please come and see what was wrong."

Following this call the next Monday morning, Mr. Godman instructed a repairman to go to appellant's place and that the

boiler's fire had gone out and that he was to get it going. This the repairman did as previously discussed. It is the respondents' position that starting the boiler's fire was the extent of their obligation to appellant. Appellant, however, contends that the duty owed to it is more extensive, and that the respondents should have inspected the boiler's external safety devices.

Testimony of appellant's expert witness, Mr. Sudweeks, a graduate mechanical engineer, testified that the gas firing valve in the boiler's interior regulates the gas flow and that this valve cannot be inspected without disassembling the boiler. According to Sudweeks the gas firing valve malfunctioned causing gas to flow unchecked into the firing chamber. As the gas continued to flow freely, the temperature of the boiler increased raising the steam pressure to excessive limits. He explained the relationship between this gas firing valve and an external pressure switch. When the furnace is cool and the pressure is low, the electric pressure switch opens the gas firing valve causing gas to enter and burn in the furnace, thus raising the temperature and increasing the steam pressure. When the steam reaches the predetermined pressure set on the pressure switch, the switch electrically closes the gas firing valve. He testified that if the gas firing valve were stuck in an open position, the electric pressure switch would have no effect on the operation of the boiler.

Sudweeks further testified that this boiler was also equipped with a steam pressure relief valve to release excess pressure generated by the boiler. It was also his opinion that the pressure relief valve did not operate as designed since it was corroded. Sudweeks failed to explain, however, whether this corrosion would be detectable by a visual or manual inspection of the steam pressure relief valve.

Appellant argues that it was entitled to assume the boiler would be free from immediate danger of malfunctioning parts proximately situated in the repairman's work area which he should have inspected.

Appellant states that the standard of respondent's duty is found in Restatement (Second), Torts, §§ 323, 395, and 404 (1965), which require repairmen to be aware of the reliance an owner could reasonably expect from the repair of a chattel possessing an unreasonable risk of potential physical harm. Respondents in response argue that the cause of the explosion, i. e. the malfunctioning of the gas firing valve, was not something which they were under a duty to inspect. However, appellant contends that even though the gas firing valve malfunctioned, the steam pressure relief valve was a back-up safety device which could have prevented the explosion had it been functioning properly. Appellant insists that respondents' repairman should have discovered the defective steam pressure relief valve which could have averted the explosion.

The proper functioning of the steam pressure relief valve was critical to the safe operation of the appellant's boiler. While it is true that the gas firing valve initially malfunctioned raising the steam pressure above the danger level, the purpose of the steam pressure relief valve was to release steam in such an event and prevent an explosion like the one in this case. The steam pressure relief valve was an external back-up safety device which could be effortlessly inspected and checked. Respondents' repairman knew and understood this valve's function, purpose, and location. Yet, at trial he admitted failing to inspect or check it.

■ The modern view as embodied in Restatement (Second), Torts, §§ 395, 404 (1965), and in line with MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), is that an independent contractor who repairs a machine or other product has the same liability as a manufacturer. See, 1 Frumer & Friedman, Products Liability, § 5.03[3] (1972). Restatement (Second), Torts, § 395 (1965), states:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he

should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied."

Restatement (Second), Torts, § 404 (1965), applies to repairmen the same duty imposed on manufacturers. We adopt the standard that one who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels.

 It is our conclusion that the jury should have been given the opportunity to resolve whether there was a duty to inspect certain safety devices on the boiler, whether the respondents breached that duty, and whether such a breach of duty if so found was the proximate cause of the boiler's explosion. When not functioning properly, a steam boiler is a hazardous instrumentality possessing a great potential for harm. Although respondents' repairman was qualified to work on steam boilers, he failed to inspect the steam pressure relief valve which could have *possibly* averted the extensive damage to appellant's store and inventory. The relative ease of checking the steam pressure relief valve's effectiveness and performance, its accessible location and its nearness to the working area in conjunction with its importance as a safety device in this case, when balanced with the boiler's potential for harm, are factors which must be considered in the appellant's favor in reversing the involuntary dismissal.

We express no opinion whether or not an inspection of the steam pressure relief valve would have or could have revealed its defective condition or whether the steam pressure relief valve would have averted this danger even if it had been operable. These are matters properly for the parties to adduce evidence and persuade the trier of facts. On the basis of the record before the court we hold that reasonable men could have differed over the existence of a duty and breach of that duty on the part of respondents' repairman in failing to inspect the steam relief valve, and that the district court erred in granting respondents' motion for an involuntary dismissal of appellant's action.

 The appellant's second assignment of error urges that the doctrine of *res ipsa loquitur* is applicable to the facts of this case. An essential element in the application of *res ipsa loquitur* is the conclusion that the occurrence in the ordinary course of things would not happen unless someone had been negligent. Hale v. Heninger, 87 Idaho 414, 422, 393 P.2d 718 (1964); Restatement (Second) of Torts, § 328D, comment c. It is also necessary that the cause of the injury point to the defendant's negligence. Restatement (Second) of Torts, supra, comments e, f, and g; Prosser, Torts, § 39 (4th ed. 1971). In this case there are other probable explanations of the cause of the boiler's explosion including the appellant's negligence in the control of maintenance of the boiler. For this reason the trial court correctly concluded that the doctrine of *res ipsa loquitur* is inapplicable to the facts of this case.

The judgment of dismissal is reversed and the case is remanded for further proceedings not inconsistent with this opinion. Costs to appellant.

DONALDSON, C. J., and SHEPARD, McQUADE and BAKES, JJ., concur.