683 P.2d 842

**Woody WING, Plaintiff-Respondent,**

v.

**CLARK'S AIR SERVICE, INC., and Grady Cantrell, Defendants-Appellants.**

No. 14506.

Supreme Court of Idaho.

Jan. 19, 1984.

On Rehearing June 19, 1984.

Michael G. Brady, of Brady, McDaniel & Matthews, Boise, for defendants-appellants.

G. Lance Salladay, of Risch, Goss, Insinger & Salladay, Boise, for plaintiff-respondent.

HUNTLEY, Justice.

By this appeal, Clark's Air Service invites this Court to assume the function of the jury by resolving conflicting facts, an invitation we decline. No meritorious issue of law is raised, the case has no precedential value and therefore, we will not set forth a detailed statement of the facts.

The jury awarded damages to Mr. Wing, finding in effect that when engaged to spray an insecticide on Wing's sugar beet crop, Clark's also sprayed the crop with an herbicide which killed the beets, and the residual effects of which also killed a crop of pinto beans planted to replace the beets.

Since the evidence demonstrated that the loading of the aircraft with chemical and the application of the chemical to the field was an operation solely under the control of Clark's, the court tendered the standard res ipsa loquitur and negligence instructions to the jury.

Clark's urges that it was error to instruct on res ipsa, asserting that the offending "instrumentality" was not the aerial spraying operation, but rather that the instrumentality was the chemical. Clark's then argues that since there was no direct proof that the air service ever had the offending herbicide (Metribuzin) in its possession or in its airplane, that the tendering of the res ipsa instruction was improper.

We disagree. Since the record contained ample evidence from which the jury could find that the crop-damage resulted from the spraying operation, and that the placement of chemicals in the aircraft was under Clark's sole control, the instruction was proper.

Judgment affirmed. Costs and attorney fees to respondent.

DONALDSON, C.J., and SHEPARD, J., concur.

BAKES, Justice, dissenting:

I must disagree with the majority's conclusion that *res ipsa loquitur* was properly applied in this case. The factual situation here does not, as a matter of law, lend itself to the application of *res ipsa loquitur*, and thus the trial court erred in allowing the jury to use an inference of negligence to award damages to the plaintiff.

*Res ipsa loquitur*, a Latin phrase meaning "the thing speaks for itself," is a legal doctrine which allows the jury to draw an inference of negligence when certain conditions are shown to exist. It is generally applied to a certain well-defined class of cases where there is no direct proof of negligence. However, *res ipsa loquitur* cannot be used in *every* case in which there is no direct proof of negligence. To allow *res ipsa* to be used in every such case would relieve the plaintiff of the burden of proving his or her case. Thus, as one noted authority on the law of torts has stated:

> "It is not enough that plaintiff's counsel can suggest a possibility of negligence. The evidence must sustain the burden of proof by making it appear more likely than not. The inference must cover all of the necessary elements of negligence, and must point to a breach of the defendant's duty. The mere fact of the presence of a banana peel on a floor may not be sufficient to show that it has been there long enough for reasonable care to require the defendant to discover and remove it; but if it is 'black, flattened out and gritty,' the conclusion may reasonably be drawn. It is for the court to determine, in the first instance, whether reasonable men on the jury may draw it." Prosser, Torts, § 39, p. 212, 213 (1971).

Thus, whether *res ipsa loquitur* may be applied in a particular case is a question of law for the court to decide in the first instance. It may be applied only in those cases where an inference can be drawn which points to a breach of the defendant's duty.

> "Res ipsa loquitur, if applicable to the facts of a particular case, creates an inference of the breach of the duty imposed and replaces direct evidence with a permissive inference of negligence." *Christensen v. Potratz*, 100 Idaho 352, 355, 597 P.2d 595, 598 (1979).

Two elements must be positively shown to exist before the doctrine of *res ipsa loquitur* may apply to a case. These two elements are commonly stated as (1) the agency or instrumentality causing the injury must be under the exclusive control of the defendant; and (2) the circumstances must be such that common knowledge and experience would justify an inference that the accident would not have happened in the absence of negligence. *Christensen v. Potratz, supra; Brizendine v. Nampa-Meridian Irr. Dist.*, 97 Idaho 580, 548 P.2d 80 (1976); *Harper v. Hoffman*, 95 Idaho 933, 523 P.2d 536 (1974). The mere happening of an accident in itself is not enough to hold a defendant liable. There must be a showing, especially where there are other probable causes, that it was the defendant's negligence which caused the injury complained of.

Two Idaho cases have dealt with the question of whether *res ipsa loquitur* may be applied to a case where there are other probable causes of the injury complained of. In *S.H. Kress Co. v. Godman*, 95 Idaho 614, 515 P.2d 561 (1973), the plaintiff's boiler exploded after having been repaired by defendant's repairman. We noted:

> "It is also necessary that the cause of the injury point to the defendant's negligence. Restatement (Second) of Torts, supra, comments e, f, and g; Prosser, Torts, § 39 (4th ed. 1971). In this case there are other probable explanations of the cause of the boiler's explosion including the appellant's negligence in the control of maintenance of the boiler. For this reason the trial court correctly concluded that the doctrine of *res ipsa loquitur* is inapplicable to the facts of this case." 95 Idaho at 617, 515 P.2d at 564.

In a more recent case we again considered the application of the doctrine to a case in

which there was more than one probable cause. *Christensen v. Potratz, supra,* involved a situation where the plaintiff was sleeping in defendant's camper when a gas explosion occurred, resulting in his injuries. We said:

"[W]here there are other possible explanations of the cause of an explosion, it is necessary that the plaintiff must present sufficient evidence pointing to the defendant's negligence as a cause of the injury, in order to apply res ipsa loquitur to that defendant. Where any one of a number of persons, wholly independent of each other, may be responsible for an injury, the case is one for affirmative proof and not for presumption by way of res ipsa loquitur." 100 Idaho at 355–56, 597 P.2d 595.

The reason for this rule has been explained further.

"It is never enough for the plaintiff to prove merely that he has been injured by the negligence of someone unidentified. Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant. On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where it is clear that it is at least equally probable that the negligence was that of another, the court must direct the jury that the plaintiff has not proved his case." Prosser, Torts, § 39, p. 218 (1971).

This rule requires a plaintiff to eliminate other possible causes which point to negligence of one other than the defendant in order for *res ipsa loquitur* to be applicable to the case. The rule is an element in the requirement that the plaintiff show exclusive control of the instrumentality in the defendant. If a plaintiff can show exclusive control in the defendant, then the happening of the accident can be inferred to have been caused by the defendant's negligence, if it is one that would not happen in the absence of such negligence.

It is at this point necessary to recite the facts of this case because, in its haste to find in favor of the plaintiff without serious analysis of the legal basis for its opinion, the majority has also neglected to recite the factual context in which *res ipsa* was mistakenly applied.

Wing has owned the two fields in question, numbered three and four in the testimony, since 1974. The fields were first farmed in 1977 and 1978, when they were leased to third parties for purposes of raising a potato crop. The evidence is undisputed that during those two years the third party lessees applied a metribuzin product, Lexone, used as a herbicide, to the land.

Wing retook control of the land and in April, 1979, planted a crop of sugar beets. This crop began dying shortly after emerging. Failure of this crop was attributed to the residual effects of the metribuzin product applied to the soil in the previous crop years.

A second crop of beets was then planted. The second crop also showed signs of metribuzin damage in addition to an infestation of worms. Wing, in conjunction with a fieldman from Simplot Soilbuilders, Bruce Johnson, decided that an insecticide, Sevimol, should be applied to the field to control the worm problem. Simplot contacted Clark's to apply the chemical. Johnson personally delivered the chemical to Clark's. Clark's then applied the chemical to Wing's fields.

The worm problem subsided after the spraying, but the condition of the beets worsened. It was decided that a second crop failure was inevitable, so the remaining plants in the field were disked under, and a new crop, this time of pinto beans, was planted. Between the time the fields were planted to beans and the time that the bean plants began to emerge, the field was sprayed with Eptam, a pre-emergent herbicide, through the irrigation system.

Within days after the crop of pinto beans emerged, the plants began turning brown and dying. The pattern of dying plants, as viewed from the air, seemed to follow a streaking pattern, with plants dying in parallel rows.

The problem presented by the evidence in this case is that there are other possible causes of the bean crop failure which point to the negligence of persons other than Clark's. First, the fact that there were two crops of beets destroyed by the residual effects of metribuzin already in the soil would lead one to the conclusion that there is a possibility that the bean crop was also affected by the residual chemical. Second, the fact that Simplot Soilbuilders had control over the chemical until it was delivered to Clark's for spraying would seem to point to Simplot as a possible negligent party. Because of the existence of these other possible causes, *res ipsa* does not apply to this case. We should follow the precedent set by *Christensen* and *S.H. Kress Co.* and refuse to allow the application of the doctrine of *res ipsa loquitur* to cases such as that involved here where there are other possible causes of the damage to the plaintiff outside of the control of the defendant.

BISTLINE, Justice, concurring in the affirmance but not in the award of attorney's fees.

Neither the Court's opinion nor the dissent sets forth the instruction which was given by the trial court. It reads:

"INSTRUCTION NO. 22

"If plaintiff has proved he was damaged in his property and that the damage was received from an instrumentality which was under defendant's control, and that in the normal course of events the damage would not have occurred if the defendant had used ordinary care while the instrumentality was under the control of the defendant, then the law permits you to infer from these facts that the defendant was negligent with respect to the instrumentality while it was under the control of the defendant." R., p. 130.

Although "instrumentality" might be a questionable word[1], and "spraying operation" might have been more appropriate, this could not reasonably have caused any trouble to experienced trial counsel in presenting final argument. I do not see that the facts of this case bear any realistic likeness to Prosser's banana peel, or Prosser's boiler explosion, or our own exploding camper *(Christensen v. Potratz)*—all mentioned in the dissent. At oral argument, Mr. Salladay, counsel for plaintiff, on his review of the appeal record, with particular reference to admitted photographic exhibits, demonstrated that plaintiff had sufficiently complied with Prosser's requirement that the "negligence in the air be brought home to the defendant"—also relied upon in the dissent. I do agree with Justice Bakes, however, in his apparent view that the case has precedential value. Case following case, opinion following opinion,—in such manner is a body of law developed. Our opinions today will, with other res ipsa opinions which have gone before, be reviewed, interpreted, and followed in future such cases. And it cannot be flatly predicted that the views of Justice Bakes will not one day prevail.

---

1. In ruling on defendant's post-judgment motions, the trial court remarked:

"THE COURT: ... And I'd have to agree with Plaintiff's Counsel, that the process—or the instrumentality we're talking about, is the whole process. It's not just the chemical in and of itself. It's the airplane, the vehicle. ... Actually I think perhaps more the airplane and its tanks. And whatever might be put on that airplane, or into it, would be the instrumentality that we're talking about. I mean, if an airplane flies over Hiroshima and drops an atom bomb, yeah sure, the atom bomb is an instrumentality of all the damage to Hiroshima, but so is the airplane. And it was the airplane that was under the control of the—you might say, of the ... people operating it, the pilot, and the entity sending the airplane over. Now, res ipsa as you point out, is a means ... of proving negligence by circumstantial evidence. And we would have to of course, recognize that. And it would seem to follow though, that where the ... substance on the ground is Metribuzin, and the ... circumstances certainly show that it wasn't put on there by pivot application, or by ground application. And the circumstances for those photographs make it show that that substance which we—from the evidence, we—everybody agrees that it was Metribuzin, then it would—*the inference would follow that it could only have come from the airplane, again circumstantial evidence.* And I think that that's sufficient to establish the res ipsa case that was established in this case. So, I'll have to deny that motion." Tr., pp. 1958–59 (emphasis added).

For that reason, and for the reason that his differing views, coinciding with those of defendants, cannot be considered frivolous or without foundation[2], I do not join in assessing attorney's fees against the appellants—whose counsel have well-represented them in this controversy.

### ORDER ON REHEARING

Appellants' Petition for Rehearing having been briefed and oral argument presented thereon on June 18, 1984, and the Court being fully advised in the premises

NOW, THEREFORE, IT IS HEREBY ORDERED, that Appellants request to modify the decision of January 4, 1984 herein is hereby denied. No attorney fees or costs awarded in connection with the rehearing proceeding.

2. In earlier opinions I have pointed out that the Court ill-advisedly modified the legislature's I.C. 12–121. In one of those opinions I declared that I would fight that issue no more forever. But it remains appropriate to note that since the Court determined to award attorney's fees on appeal—which was over the objection of Justice Donaldson and myself, much of our time is indeed consumed in resolving that single issue, and often with vastly differing and disproportionate results. Recently, in *Everett v. Trunnell,* 105 Idaho 787, 673 P.2d 387 (1983), the Court entered a $6,000 award of attorney's fees to *two* firms representing the Trunnells for their successful defense of the Everetts' appeal—seen as frivolous and/or without foundation by a majority of this Court. But a single 42-page brief was filed for the Trunnells, with an included 14-page appendix containing excerpts from a deposition. The two firms declared a total of 109.1 hours of attorney time, plus staff time, plus computerized research time. As I mentioned in my separate opinion in that case, the brief is well done. The questions which naturally present themselves are: How much time and effort should be expended in resisting a frivolous appeal.