UNITED STEELWORKERS OF AMERICA, AFL–CIO–
CLC *v.* RAWSON, INDIVIDUALLY AND AS GUARDIAN
AD LITEM FOR RAWSON, ET AL.

No. 89–322.   Argued March 26, 1990—Decided May 14, 1990

WHITE, J., delivered the opinion of the Court, in which BRENNAN, MAR-
SHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined.   KENNEDY, J.,

filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA, J., joined, *post*, p. 376.

*George H. Cohen* argued the cause for petitioner. With him on the briefs were *Robert M. Weinberg, Julia P. Clark, Laurence Gold, Bernard Kleiman, Carl Frankel, Paul D. Carey*, and *James D. Nelson*.

*Kenneth B. Howard* argued the cause for respondents. With him on the brief were *Kerwin C. Bennett* and *Lloyd J. Webb*.*

JUSTICE WHITE delivered the opinion of the Court.

We granted certiorari in this case because the decisions of the Supreme Court of Idaho, holding that petitioner may be liable under state law for the negligent inspection of a mine where respondents' decedents worked, raised important questions about the operation of federal and state law in defining the duties of a labor union acting as a collective-bargaining agent.

I

This dispute arises out of an underground fire that occurred on May 2, 1972, at the Sunshine Mine in Kellogg, Idaho, and caused the deaths of 91 miners. Respondents, the survivors of four of the deceased miners, filed this state-law wrongful-death action in Idaho state court. Their complaint alleged that the miners' deaths were proximately caused by fraudulent and negligent acts of petitioner United Steelworkers of America (Union), the exclusive bargaining representative of the miners working at the Sunshine Mine. As to the negligence claim, the complaint specifically alleged that the Union "undertook to act as accident prevention representative and enforcer of an agreement negotiated between *[sic]* [the Union] on behalf of the deceased miners," App. 53–54, and "undertook to provide representatives who in-

---

*Briefs of *amici curiae* urging reversal were filed for Continental Beverage Packaging, Inc., by *Robert A. Christensen* and *Stanley S. Jaspan;* and for Public Citizen by *Paul Alan Levy* and *Alan B. Morrison*.

spected [the Sunshine Mine] and pretended to enforce the contractual accident prevention clauses," *id.*, at 54. Respondents' answers to interrogatories subsequently made clear that their suit was based on contentions that the Union had, through a collective-bargaining agreement negotiated with the operator of the Sunshine Mine, caused to be established a joint management-labor safety committee intended to exert influence on management on mine safety measures; that members of the safety committee designated by the Union had been inadequately trained on mine safety issues; and that the Union, through its representatives on the safety committee, had negligently performed inspections of the mine that it had promised to conduct, failing to uncover obvious and discoverable deficiencies. *Id.*, at 82–83.

The trial court granted summary judgment for the Union, accepting the Union's argument that "federal law has preempted the field of union representation and its obligation to its membership," App. to Pet. for Cert. 164a, and that "[n]egligent performance of [a union's] contractual duties does not state a claim under federal law for breach of fair representation," *id.*, at 163a. The Supreme Court of Idaho reversed. *Dunbar* v. *United Steelworkers of America*, 100 Idaho 523, 602 P. 2d 21 (1979). In the view of the Supreme Court of Idaho, although federal law unquestionably imposed on the Union a duty of fair representation of the miners, respondents' claims were "not necessarily based on the violation of the duty of fair representation and such is not the only duty owed by a union to its members." *Id.*, at 526, 602 P. 2d, at 24. Three of the five justices concurred specially to emphasize that "the precise nature of the legal issues raised by [respondents'] wrongful death action is not entirely clear at the present procedural posture of the case," and that "a final decision whether the wrongful death action . . . is preempted . . . must therefore await a full factual development." *Id.*, at 547, 602 P. 2d, at 25 (Bakes, J., specially concurring).

We denied the Union's petition for certiorari. *Steelworkers* v. *Dunbar*, 446 U. S. 983 (1980).

After extensive discovery, the trial court again granted summary judgment for the Union. App. to Pet. for Cert. 89a–106a. As to respondents' fraud claim, the court concluded that the record was devoid of evidence supporting the contentions that the Union had made misrepresentations of fact, that the Union had intended to defraud the miners, or that the miners had relied on Union representations. *Id.*, at 96a. On the negligence count, the trial court first noted that, in its view, respondents' claims centered on the collective-bargaining contract between the Union and the Sunshine Mine, especially Article IX of the agreement, which established the joint management-labor safety committee. *Id.*, at 90a–91a. The trial court urged the State Supreme Court to reconsider its conclusion that respondents' state-law negligence claim was not pre-empted by federal labor law, reasoning that "[respondents] are complaining about the manner in which the Union carried out the collective bargaining agreement, essentially saying the Union advisory committee should have done more," and that respondents "are attempting to hold the [Union] liable on the basis of its representational duties." *Id.*, at 103a–104a.

The Supreme Court of Idaho originally affirmed the grant of summary judgment on appeal. *Id.*, at 49a–88a. On rehearing, however, the Idaho Supreme Court withdrew its prior opinion and concluded that respondents had stated a valid claim under Idaho law that was not pre-empted by federal labor law. *Rawson* v. *United Steelworkers of America*, 111 Idaho 630, 726 P. 2d 742 (1986). Distinguishing this Court's decision in *Allis-Chalmers Corp.* v. *Lueck*, 471 U. S. 202 (1985), which held that resolution of a state-law tort claim must be treated as a claim arising under federal labor law when it is substantially dependent on construction of the terms of a collective-bargaining agreement, the Supreme Court of Idaho stated that "in the instant case, the provisions

of the collective bargaining agreement do not require interpretation, . . . but rather the provisions determine only the nature and scope of the Union's duty." 111 Idaho, at 640, 726 P. 2d, at 752. The court continued: "Our narrow holding today is that the Union, having inspected, assumed a duty to use due care in inspecting and, from the duty to use due care in inspecting arose the further duty to advise the committee of any safety problems the inspection revealed." *Ibid.* The court also affirmed the trial court's conclusion that summary judgment for the Union was proper on respondents' fraud claim. *Id.*, at 633, 726 P. 2d, at 745.

The Union again petitioned for certiorari. While that petition was pending, we decided *Electrical Workers* v. *Hechler*, 481 U. S. 851 (1987), in which it was held that an individual employee's state-law tort suit against her union for breach of the union's duty of care to provide the employee with a safe workplace must be treated as a claim under federal labor law, when the duty of care allegedly arose from the collective-bargaining agreement between the union and the employer. Six days later, we granted the Union's petition, vacated the judgment of the Supreme Court of Idaho, and remanded this case for further consideration in light of *Hechler*. *Steelworkers* v. *Rawson*, 482 U. S. 901 (1987).

On remand, the Supreme Court of Idaho "adhere[d] to [its] opinion as written." 115 Idaho 785, 788, 770 P. 2d 794, 797 (1988). The court also distinguished *Hechler*, stressing that there we had considered a situation where the alleged duty of care arose from the collective-bargaining agreement, whereas in this case "the activity was concededly undertaken and the standard of care is imposed by state law without reference to the collective bargaining agreement." 115 Idaho, at 786, 770 P. 2d, at 795. The court further stated that it was "not faced with looking at the Collective Bargaining Agreement to determine whether it imposes some new duty upon the union—rather it is conceded that the union undertook to inspect and, thus, the issue is solely whether that

inspection was negligently performed under traditional Idaho tort law." *Id.*, at 787, 770 P. 2d, at 796.

We granted certiorari, 493 U. S. 1017 (1990), and we now reverse.

## II

Section 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, 29 U. S. C. § 185(a), states:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Over 30 years ago, this Court held that § 301 not only provides the federal courts with jurisdiction over controversies involving collective-bargaining agreements but also authorizes the courts to fashion "a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers* v. *Lincoln Mills of Alabama*, 353 U. S. 448, 451 (1957). Since then, the Court has made clear that § 301 is a potent source of federal labor law, for though state courts have concurrent jurisdiction over controversies involving collective-bargaining agreements, *Charles Dowd Box Co.* v. *Courtney*, 368 U. S. 502 (1962), state courts must apply federal law in deciding those claims, *Teamsters* v. *Lucas Flour Co.*, 369 U. S. 95 (1962), and indeed any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301, see *Avco Corp.* v. *Machinists*, 390 U. S. 557 (1968). State law is thus "preempted" by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements.

In recent cases, we have recognized that the pre-emptive force of § 301 extends beyond state-law contract actions. In *Allis-Chalmers Corp.* v. *Lueck, supra,* we held that a state-law tort action against an employer may be pre-empted by § 301 if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement. Any other result, we reasoned, would "allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.,* at 211. We extended this rule of pre-emption to a tort suit by an employee against her union in *Electrical Workers* v. *Hechler, supra.* There Hechler alleged that her union had by virtue of its collective-bargaining agreement with the employer and its relationship with her assumed the duty to ensure that she was provided with a safe workplace, and that the union had violated this duty. As in *Allis-Chalmers,* the duty relied on by Hechler was one without existence independent of the collective-bargaining agreement (unions not, under the common law of Florida, being charged with a duty to exercise reasonable care in providing a safe workplace, see 481 U. S., at 859–860), but was allegedly created by the collective-bargaining agreement, of which Hechler claimed to be a third-party beneficiary, see *id.,* at 861. Because resolution of the tort claim would require a court to "ascertain, first, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union . . . , and second, the nature and scope of that duty," *id.,* at 862, we held that the tort claim was not sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301.

At first glance it would not appear difficult to apply these principles to the instant case. Respondents alleged in their complaint that the Union was negligent in its role as "enforcer of an agreement negotiated between *[sic]* [the Union] on behalf of the deceased miners," App. 53–54, a plain refer-

ence to the collective-bargaining agreement with the operator of the Sunshine Mine. Respondents' answers to interrogatories gave substance to this allegation by stating that "by the contract language" of the collective-bargaining agreement, the Union had caused the establishment of the joint safety committee with purported influence on mine safety issues, and that members of the safety committee had failed reasonably to perform inspections of the mine or to uncover obvious and discoverable deficiencies in the mine safety program. App. 82–83. The only possible interpretation of these pleadings, we believe, is that the duty on which respondents relied as the basis of their tort suit was one allegedly assumed by the Union in the collective-bargaining agreement. Prior to our remand, the Supreme Court of Idaho evidently was of this view as well. The court noted then that the Union could be liable under state tort law because it allegedly had contracted to inspect, and had in fact inspected, the mine "pursuant to the provisions of the collective bargaining agreement." 111 Idaho, at 638, 726 P. 2d, at 750. Although the Idaho Supreme Court believed that resolution of the tort claim would not require interpretation of the terms of the collective-bargaining agreement, it acknowledged that the provisions of that agreement determined "the nature and scope of the Union's duty," id., at 640, 726 P. 2d, at 752.

The situation is complicated, however, by the Idaho Supreme Court's opinion after our remand. Although the court stated that it adhered to its prior opinion as written, 115 Idaho, at 788, 770 P. 2d, at 797, it also rejected the suggestion that there was any need to look to the collective-bargaining agreement to discern whether it placed any implied duty on the Union. Rather, Idaho law placed a duty of care on the Union because the Union did, in fact, actively inspect the mine, and the Union could be held liable for the negligent performance of that inspection. Id., at 787, 770 P. 2d, at 796. According to the Supreme Court of Idaho, the

Union may be liable under state tort law because its duty to perform that inspection reasonably arose from the fact of the inspection itself rather than the fact that the provision for the Union's participation in mine inspection was contained in the labor contract.

As we see it, however, respondents' tort claim cannot be described as independent of the collective-bargaining agreement. This is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society. There is no allegation, for example, that members of the safety committee negligently caused damage to the structure of the mine, an act that could be unreasonable irrespective of who committed it and could forseeably cause injury to any person who might possibly be in the vicinity.

Nor do we understand the Supreme Court of Idaho to have held that any casual visitor in the mine would be liable for violating some duty to the miners if the visitor failed to report obvious defects to the appropriate authorities. Indeed, the court did not disavow its previous opinion, where it acknowledged that the Union's representatives were participating in the inspection process pursuant to the provisions of the collective-bargaining agreement, and that the agreement determined the nature and scope of the Union's duty. If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the miners. Clearly, the enforcement of that agreement and the remedies for its breach are matters governed by federal law. "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp.* v. *Lueck,* 471 U. S., at 211. Pre-emption by federal law cannot be

avoided by characterizing the Union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a state-law tort. Accordingly, this suit, if it is to go forward at all, must proceed as a case controlled by federal, rather than state, law.

## III

The Union insists that the case against it may not go forward even under federal law. It argues first that only the duty of fair representation governs the exercise of its representational functions under the collective-bargaining contract, and that a member may not sue it under § 301 for breach of contract. Second, the Union submits that even if it may be sued under § 301, the labor agreement contains no enforceable promise made by it to the members of the unit in connection with inspecting the mine. Third, the Union asserts that as the case now stands, it is charged with only negligence, which is insufficient to prove a breach of its duty of fair representation.

"It is now well established that, as the exclusive bargaining representative of the employees, . . . the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining . . . and in its enforcement of the resulting collective bargaining agreement." *Vaca* v. *Sipes*, 386 U. S. 171, 177 (1967). "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Ibid.* This duty of fair representation is of major importance, but a breach occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.*, at 190. The courts have in general assumed that mere negligence, even in the enforcement of a collective-bargaining agreement, would

not state a claim for breach of the duty of fair representation, and we endorse that view today.

The Union's duty of fair representation arises from the National Labor Relations Act itself. See *Breininger* v. *Sheet Metal Workers*, 493 U. S. 67, 86–87 (1989); *DelCostello* v. *Teamsters*, 462 U. S. 151, 164 (1983); *United Parcel Service, Inc.* v. *Mitchell*, 451 U. S. 56, 66 (1981) (Stewart, J., concurring in judgment). The duty of fair representation is thus a matter of status rather than contract. We have never held, however, that, as a matter of federal law, a labor union is *prohibited* from voluntarily assuming additional duties to the employees by contract. Although at one time it may have appeared most unlikely that unions would be called upon to assume such duties, see *Humphrey* v. *Moore*, 375 U. S. 335, 356–357 (1964) (Goldberg, J., concurring in result), nonetheless "it is of the utmost importance that the law reflect the realities of industrial life and the nature of the collective bargaining process," *id.*, at 358, and it may well be that if unions begin to assume duties traditionally viewed as the prerogatives of management, cf. *Breininger, supra*, at 87–88; *Electrical Workers* v. *Hechler*, 481 U. S., at 859–860, employees will begin to demand that unions be held more strictly to account in their carrying out of those duties. Nor do we know what the source of law would be for such a prohibition, for "when neither the collective-bargaining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract." *United Mine Workers of America Health and Retirement Funds* v. *Robinson*, 455 U. S. 562, 576 (1982); cf. *H. K. Porter Co.* v. *NLRB*, 397 U. S. 99, 106–108 (1970).

Our decision in *Electrical Workers* v. *Hechler, supra,* is relevant here. There we were presented with a claim by an employee that the union had breached its duty to provide her with a safe workplace. The alleged duty was plainly based on the collective-bargaining agreement that the union

had negotiated with the employer; Hechler argued that she was a third-party beneficiary of that agreement. *Id.*, at 861, 864–865. Hechler carefully distinguished her § 301 claim from a fair representation claim, *id.*, at 864, and so did we, for the distinction had a significant effect: The statutes of limitations for the two claims are different. *Id.*, at 863–865. We therefore accepted, and again accept, that "a labor union . . . may assume a responsibility towards employees by accepting a duty of care through a contractual agreement," *id.*, at 860, even if that contractual agreement is a collective-bargaining contract to which only the union and the employer are signatories.

But having said as much, we also think it necessary to emphasize caution, lest the courts be precipitate in their efforts to find unions contractually bound to employees by collective-bargaining agreements. The doctrine of fair representation is an important check on the arbitrary exercise of union power, but it is a purposefully limited check, for a "wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents." *Ford Motor Co.* v. *Huffman*, 345 U. S. 330, 338 (1953). If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees. Cf. *Republic Steel Corp.* v. *Maddox*, 379 U. S. 650, 653 (1965).

Applying this principle to the case at hand, we are quite sure that respondents may not maintain a § 301 suit against the Union. Nothing in the collective-bargaining agreement suggests that it creates rights directly enforceable by the individual employees against the Union. The pertinent part of the collective-bargaining agreement, Article IX, consists entirely of agreements between the Union and the employer and enforceable only by them. App. 20–22. Section 2 of the Article provides that "a committee consisting of two (2) su-

pervisory personnel and two (2) reliable employees, approved by the Union, shall inspect" the mine if an employee complains to the shift boss that he is being forced to work in unusually unsafe conditions but receives no redress, *id.*, at 20, but even if this section might be interpreted as obliging the Union to inspect the mine in such circumstances, the promise is not one specifically made to, or enforceable by, individual employees. Nor have respondents placed anything in the record indicating that any such complaints were made or that the Union failed to act on them. Section 4 of the Article states that a Union member may accompany the state mine safety inspection team on its inspections of the mine, and Section 5 states that a Union designate and the Safety Engineer "shall make a tour of a section of the mine" once each month, *id.*, at 22, but again the agreement gives no indication that these obligations, if such is what they are, may be enforced by an individual employee.

Moreover, under traditional principles of contract interpretation, respondents have no claim, for with exceptions under federal labor law not relevant here, see *Lewis* v. *Benedict Coal Corp.*, 361 U. S. 459, 468–471 (1960), third-party beneficiaries generally have no greater rights in a contract than does the promisee. For respondents to have an enforceable right as third-party beneficiaries against the Union, at the very least the employer must have an enforceable right as promisee. But the provisions in the collective-bargaining agreement relied on by respondents are not promises by the Union to the employer. Cf. *Teamsters* v. *Lucas Flour Co.*, 369 U. S., at 104–106. They are, rather, concessions made by the employer to the Union, a limited surrender of the employer's exclusive authority over mine safety. A violation by the employer of the provisions allowing inspection of the mine by Union delegates might form the basis of a § 301 suit against the employer, but we are not presented with such a case.

## IV

In performing its functions under the collective-bargaining agreement, the Union did, as it concedes, owe the miners a duty of fair representation, but we have already noted that respondents' allegation of mere negligence will not state a claim for violation of that duty. *Supra*, at 372–373. Indeed, respondents have never specifically relied on the federal duty of fair representation, nor have they alleged that the Union improperly discriminated among its members or acted in arbitrary and capricious fashion in failing to exercise its duties under the collective-bargaining agreement. Cf. *Vaca* v. *Sipes*, 386 U. S., at 177. Respondents did, of course, allege that the Union had committed fraud on the membership in violation of state law, a claim that might implicate the duty of fair representation. The Supreme Court of Idaho held, however, that summary judgment was properly entered on this claim because respondents had failed to demonstrate specific facts showing the existence of a genuine issue for trial. 111 Idaho, at 633, 726 P. 2d, at 745. Respondents did not cross-petition to challenge this aspect of the Idaho Supreme Court's judgment, and we are in no position to question it.

It follows that the judgment of the Supreme Court of Idaho must be

*Reversed.*

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, dissenting.

The Idaho Supreme Court held that summary judgment was improper and that Tharon Rawson and the other respondents could proceed to trial against the United Steelworkers of America (Union) on a state-law tort theory. Although the respondents have not yet established liability under Idaho law, the Union argues that federal law must govern and bar their suit. To support this position, the Union relies on both § 301 of the Labor Management Relations Act, 29 U. S. C. § 185(a), and the duty of fair represen-

tation implicit in § 9(a) of the National Labor Relations Act (NLRA), 49 Stat. 453, as amended, 29 U. S. C. § 159(a). The Court accepts the Union's contentions with respect to § 301 and does not reach the issue of pre-emption by the duty of fair representation. With all respect, I dissent. Neither of the Union's arguments for displacing Idaho law without any trial on the merits has validity.

## I

The Union bases its § 301 argument on our decisions in *Lingle* v. *Norge Division of Magic Chef, Inc.*, 486 U. S. 399, 405–406 (1988); *Electrical Workers* v. *Hechler*, 481 U. S. 851, 854 (1987); and *Allis-Chalmers Corp.* v. *Lueck*, 471 U. S. 202, 211 (1985). These cases hold that § 301 pre-empts state-law causes of action that require interpretation of a collective-bargaining agreement. In my view, they have no application here. The Idaho Supreme Court, whose determination of state law supersedes that of the trial court, has declared that the respondents' case rests on allegations of the Union's active negligence in a voluntary undertaking, not its contractual obligations.

Adopting verbatim a standard from the Restatement (Second) of Torts § 323 (1965), the Idaho Court expressed the law governing the respondents' claims as follows:

> "'One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> "'(a) his failure to exercise such care increases the risk of harm, [or]
> "'(b) the harm is suffered because of the other's reliance upon the undertaking.'" *Rawson* v. *United Steelworkers of America*, 111 Idaho 630, 637, 726 P. 2d 742, 749 (1986).

According to the Idaho Supreme Court's second opinion, the respondents. can prove the elements of the tort described in § 323 without relying on the Union's collective-bargaining agreement. The Court states:

> "In the instant case, we are not faced with looking at the Collective Bargaining Agreement to determine whether it imposes some new duty upon the union— rather it is conceded the union undertook to inspect and, thus, the issue is solely whether that inspection was negligently performed under traditional Idaho tort law." 115 Idaho 785, 787, 770 P. 2d 794, 796 (1989).

Placing this analysis of state law in the context of our precedents, the Idaho court explains:

> "[T]he instant case is clearly distinguishable from *Hechler* in that here the state tort basis of the action was not abandoned, but has been pursued consistently both at the trial and appellate levels and the tort exists without reference to the collective bargaining agreement." *Id.*, at 787–788, 770 P. 2d, at 796–797.

The court states further:

> "[As in *Lingle* v. *Norge Division of Magic Chef, Inc.*, *supra*], no interpretation of the collective-bargaining agreement is required to determine whether the union member of the inspection team committed a tort when he committed various acts and omissions such as failure to note the self-rescuers were stored in boxes with padlocks or that the activating valves of the oxygen-breathing-apparatuses were corroded shut. Rather, such alleged acts of negligence are measured by state tort law." *Id.*, at 788, 770 P. 2d, at 797.

These statements reveal that the Idaho Supreme Court understood the federal pre-emption standards and interpreted state law not to implicate them. Because we have no basis for disputing the construction of state law by a state supreme court, see *Clemons* v. *Mississippi*, 494 U. S. 738, 747

(1990), I submit that, at this stage of the proceedings, we must conclude that § 301 does not govern the respondents' claims.

The Court reaches a different conclusion because it doubts that the Idaho Supreme Court means what it seems to have said. The Court bases its view, to a large extent, on the Idaho court's expressed intention to "adhere to [its first] opinion as written." 115 Idaho, at 788, 770 P. 2d, at 797. The first opinion says: "Because the union, pursuant to the provisions of the collective bargaining agreement, had contracted to inspect and *in fact, inspected* the mine, it owed the (minimal) duty to its members to exercise due care in inspecting and in reporting the findings of its inspection." 111 Idaho, at 638, 726 P. 2d, at 750. The Court construes the remark to negate the unequivocal statements quoted above. I cannot accept this labored interpretation.

The Idaho Supreme Court's adherence to the first opinion does not implicate § 301 because it does not require interpretation of a collective-bargaining agreement. The first opinion suggests that the respondents may refer to the collective-bargaining agreement. It does not eliminate the possibility, identified three times in the second opinion, that the respondents may prove the elements of § 323 without relying on the collective-bargaining agreement. Even the Union concedes:

> "After *Hechler,* as we understand matters, both plaintiffs and the Idaho court would locate the source of the union's duty to inspect [in a non-negligent manner] in the union's action of accompanying company and state inspectors on inspections of the mine, and not in any contractual agreement by the union to inspect." Brief for Petitioner 27–28.

The Court, thus, reads too much into the last sentence of the Idaho Supreme Court's second opinion.

I see no reason not to allow this case to go forward with a simple mandate: The respondents may press their state claims so long as they do not rest upon the collective-bargaining

agreement. To the extent that any misunderstanding might exist, this approach would preserve all federal interests. If the Idaho Supreme Court, after a trial on the merits, were to uphold a verdict resting on the Union's obligations under the collective-bargaining agreement, we could reverse its decision. But for now we must take the case as the Idaho Supreme Court has given it to us. According to the second opinion, the respondents may prove the elements of § 323 without relying on the Union's contractual duties.

The Court also rules against the respondents because it surmises that § 323 has no general applicability. The Court assumes that only union members could recover from the Union for its negligence in inspecting the mine and that union members could not recover from anyone else for comparable negligence. See *ante*, at 370–371. I agree that a State cannot circumvent our decisions in *Lingle, Hechler,* and *Allis-Chalmers,* by the mere "relabeling" as a tort claim an action that in law is based upon the collective-bargaining process. *Allis-Chalmers,* 471 U. S., at 211. We must have the ultimate responsibility for deciding whether a state law depends on a collective-bargaining agreement for the purposes of § 301. In this case, however, I see no indication that the tort theory pressed by the respondents has the limited application presumed by the Court.

The Idaho Supreme Court did not invent, for the purposes of this case, the theory underlying the respondents' claims. As Cardozo put it: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer* v. *Shepard,* 233 N. Y. 236, 239, 135 N. E. 275, 276 (1922). Restatement § 323, upon which the Idaho Court relies, embodies this principle and long has guided the interpretation of Idaho tort law. See, *e. g., Steiner Corp.* v. *American District Telegraph,* 106 Idaho 787, 791, 683 P. 2d 435, 439 (1984) (fire alarm failure); *S. H. Kress & Co.* v. *Godman,* 95 Idaho 614, 616, 515 P. 2d 561, 563 (1973) (boiler explosion);

*Fagundes* v. *State*, 116 Idaho 173, 176, 774 P. 2d 343, 346 (App. 1989) (helicopter crash); *Carroll* v. *United Steelworkers of America*, 107 Idaho 717, 723, 692 P. 2d 361, 367 (1984) (Bistline, J., dissenting) (machinery accident). The Court has identified no basis for its assumption that § 323 has a narrower scope than its plain language and these cases indicate. I thus would not find pre-emption on the mere supposition that the Union's duty runs only to the union members.

## II

The Union also argues that the duty of fair representation immunizes it from liability under § 323. Allowing the States to impose tort liability on labor organizations, it contends, would upset the balance of rights and duties that federal law has struck between unions and their members. I disagree because nothing in the NLRA supports the Union's position.

Section 9(a) of the NLRA, 29 U. S. C. § 159(a), grants a duly elected union the exclusive authority to represent all employees in a collective-bargaining unit. We have reasoned:

> "The fair interpretation of the statutory language is that the organization chosen to represent a craft is chosen to represent all its members, the majority as well as the minority, and it is to act for and not against those whom it represents. It is a principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf, and that such a grant of power will not be deemed to dispense with all duty toward those from whom it is exercised unless so expressed." *Steele* v. *Louisville & Nashville R. Co.*, 323 U. S. 192, 202 (1944) (footnote omitted) (interpretation of § 2(a) of the Railway Labor Act, 45 U. S. C. § 152 (1982 ed.), adopted for § 9(a) of the NLRA in *Ford Motor Co.* v. *Huffman*, 345 U. S. 330, 337 (1953)).

As a result, we have read § 9(a) to establish a duty of fair representation requiring a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca* v. *Sipes*, 386 U. S. 171, 177 (1967).

Although we have inferred that Congress intended to impose a duty of fair representation in § 9(a), I see no justification for the further conclusion that Congress desired to grant unions an immunity from all state tort law. Nothing about a union's status as the exclusive representative of a bargaining unit creates a need to exempt it from general duties to exercise due care to avoid injuring others. At least to some extent, therefore, I would conclude that Congress "by silence indicate[d] a purpose to let state regulation be imposed." *Retail Clerks* v. *Schermerhorn*, 375 U. S. 96, 104 (1963).

Our decision in *Farmer* v. *Carpenters*, 430 U. S. 290 (1977), confirms this view. *Farmer* held that the NLRA did not pre-empt a union member's action against his union for intentional infliction of emotional distress. See *id.*, at 305. The union member complained that his union ridiculed him in public and refused to refer jobs to him in accordance with hiring hall rules. See *id.*, at 293. In analyzing this claim, we ruled that the NLRA's pre-emption of state tort law depends on two factors: "the state interests in regulating the conduct in question and the potential for interference with the federal regulatory scheme." *Id.*, at 297. Both of these factors militated against pre-emption in *Farmer*. Noting that "our cases consistently have recognized the historic state interest in 'such traditionally local matters as public safety and order,'" *id.*, at 299 (quoting *Allen-Bradley Local* v. *Wisconsin Employment Relations Bd.*, 315 U. S. 740, 749 (1942)), we ruled that the tort law addressed proper matters of state concern. We further observed that, although the tort liability for intentional infliction of emotional distress might interfere with the federal prohibition against discrimination by a

union, that "potential for interference is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens." 430 U. S., at 304.

The *Farmer* analysis reveals that Idaho may hold the union liable for negligence in inspecting the mine. The strength and legitimacy of the State's interests in mine safety stand beyond question; the Union's failure to exercise due care, according to the allegations, caused or contributed to the deaths of 91 Idaho miners. Allowing this case to proceed to trial, moreover, would pose little threat to the federal regulatory scheme. State courts long have held unions liable for personal injuries under state law. See, *e. g.*, *DiLuzio* v. *United Electrical, Radio, and Machine Workers of America*, 386 Mass. 314, 318, 435 N. E. 2d 1027, 1030 (1982) (assault at workplace); *Brawner* v. *Sanders*, 244 Ore. 302, 307, 417 P. 2d 1009, 1012 (1966) (in banc) (personal injuries); *Marshall* v. *International Longshoremen's and Warehousemen's Union*, 57 Cal. 2d 781, 787, 371 P. 2d 987, 991 (1962) (stumble in union hall parking lot); *Inglis* v. *Operating Engineers Local Union No. 12*, 58 Cal. 2d 269, 270, 373 P. 2d 467, 468 (1962) (assault at union meeting); *Hulahan* v. *Sheehan*, 522 S. W. 2d 134, 139–141 (Mo. App. 1975) (slip and fall on union hall stairs). The Union presents no argument that this longstanding practice has interfered with federal labor regulation. Indeed, as the Court itself holds, nothing in the federal statutory scheme addresses the Union's conduct or provides redress for the injuries that it may have produced. See *ante*, at 373–375.

The Union's position also deviates from the well-established position of the Courts of Appeals. These courts have found pre-emption by the duty of fair representation in two situations. First, the courts have said that the duty of fair fair representation pre-empts state duties that depend on a collective-bargaining agreement or on the union's status as the exclusive collective bargaining agent. See, *e. g.*, *Richardson* v. *United Steelworkers of America*, 864 F. 2d 1162,

1165–1167 (CA5 1989); *Condon* v. *Local 2944, United Steelworkers of America,* 683 F. 2d 590, 595 (CA1 1982). As noted above, however, the Union's duties in this case do not stem from a contract or from its status as a union. Second, other courts have found the federal duty of fair representation to supplant equivalent state-law duties. See, *e. g.,* *Jones* v. *Truck Drivers Local Union No. 299,* 838 F. 2d 856, 861 (CA6 1988) (sex discrimination); *Maynard* v. *Revere Copper Products,* 773 F. 2d 733, 735 (CA6 1985) (handicapped discrimination); *Peterson* v. *Air Line Pilots Assn., International,* 759 F. 2d 1161, 1170 (CA4 1985) (blacklisting). In this case, state law differs from federal law in that the duty of fair representation does not address the conduct in question. The Union, as a result, has shown no support for its contention that the duty of fair representation pre-empts the Idaho tort law. For these reasons, I dissent.