UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 95-1197

ALBERT A. FLIBOTTE, ET AL.,

Plaintiffs, Appellants,

v.

PENNSYLVANIA TRUCK LINES, INC.,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge] 



Before

Selya and Boudin, Circuit Judges, 

and Dowd,* Senior District Judge. 



Malcolm J. Barach for appellants. 
Regina C. Reardon, with whom Brian P. Crowner and Bray & 
Reardon, P.C. were on brief, for appellee. 



December 10, 1997



*Of the Northern District of Ohio, sitting by designation.

SELYA, Circuit Judge. Having prevailed before a jury, SELYA, Circuit Judge. 

plaintiff-appellant Albert A. Flibotte saw his apparent victory

turn to ashes when the district court entered judgment as a

matter of law in favor of defendant-appellee Pennsylvania Truck

Lines, Inc. (PTL) on the ground that Flibotte's claims were

preempted by section 301 of the Labor Management Relations Act of

1947, 29 U.S.C. 185 (1994). Flibotte beseeches us to reinstate

the jury verdict. We are unable to do so.

I. I. 

Background Background 

Flibotte, a member of Teamsters Local 25, spent almost

three decades in PTL's employ. This relationship persisted until

PTL terminated him in 1987 for his refusal to participate in a

drug testing procedure a refusal that, under the applicable

collective bargaining agreement, "constitute[d] a presumption of

intoxication." National Master Freight Agreement, Art. 35, Sec.

3 (NMFA). Local 25 filed a grievance on Flibotte's behalf

pursuant to the NMFA and eventually took the case to binding

arbitration. The arbitrator found that Flibotte's ouster did not

violate the collective bargaining pact and rejected the

grievance.

Flibotte subsequently filed a civil action against PTL

in a Massachusetts state court. In addition to a derivative

claim for loss of consortium on behalf of Mrs. Flibotte, the

complaint contained counts for negligence, invasion of privacy,

impairment of civil rights, defamation, negligent infliction of

2

emotional distress, and intentional infliction of emotional

distress. Flibotte alleged that PTL notified a group of 37

employees, himself included, to report on March 13, 1987, for the

biennial physical examination and drug test required under

federal motor carrier safety regulations; that he refused

"because his examination was not yet due and because the

[designated examination site] was rat-infested"; that, within one

week after he boycotted the scheduled test, he took and passed a

drug test administered by his own physician; and that PTL

nonetheless discharged him summarily on March 18, 1987. He

claimed that in so doing, PTL wrongfully terminated his

employment and, in the bargain, breached various state-law

duties.

PTL removed the case to the United States District

Court for the District of Massachusetts on dual bases (diversity

of citizenship and the existence of a federal question). After

the usual preliminaries including the denial of PTL's motion

for summary judgment the case proceeded to trial before Judge

Nelson and a jury. During the ensuing eight-day trial, PTL twice

moved for judgment as a matter of law on the ground of section

301 preemption. Judge Nelson denied one such motion at the end

of the plaintiff's case and the other at the close of all the

evidence. In due season, the jury returned a verdict for

Flibotte on three counts negligence, negligent infliction of

emotional distress, and intentional infliction of emotional

distress and awarded him $625,000 in damages.

3

Like the mills of the gods, the mills of the judiciary

sometimes grind exceedingly slow. On November 20, 1991, PTL made

a timely motion for judgment as a matter of law, see Fed. R. Civ. 

P. 50(b), in which it again hawked section 301 preemption. The

motion sat unresolved when, in April of 1992, PTL sought the

bankruptcy court's protection under Chapter 11, thus triggering

an automatic stay of proceedings in the district court. See 11 

U.S.C. 362 (1990). Some seventeen months later, the bankruptcy

court confirmed a plan of reorganization. PTL's emergence from

the toils of bankruptcy cleared the way for resumption of the

district court proceedings. By then, however, Judge Nelson had

become disabled and a considerable period of time elapsed before

the case was reassigned and a new jurist, Judge Gertner, took up

the outstanding motion. She eventually granted it, provoking

this appeal.

Flibotte's objections possess both procedural and

substantive dimensions. First, he argues that Judge Gertner

erred when she purposed to revisit issues previously decided by

Judge Nelson. Second, he assails the merits of her determination

that section 301 preempts his state-law claims. We address each

of these objections in turn.

II. II. 

Law of the Case Law of the Case 

Flibotte's procedural objection has a chameleonic

quality. In one iteration, it implies that Judge Gertner

improperly made fact-based determinations contrary to those made

4

by her predecessor and in flagrant disregard of the truism that

the judge who actually presides over a trial is in a superior

position to make such determinations. Without engaging the

myriad counter-precedential assumptions that are essential to

this objection, it suffices to say that the legal framework in

which motions for judgment as a matter of law exist does not

permit courts confronted with such motions to engage in

differential factfinding, see Veranda Beach Club Ltd. Partnership 

v. Western Sur. Co., 936 F.2d 1364, 1383-84 (1st Cir. 1991) 

(discussing applicable standards), and there is no indication

here that Judge Gertner disobeyed these guidelines.

Flibotte's next iteration of his procedural objection

is no more rewarding. He asserts that a court is bound by its

own precedents, and that, therefore, Judge Gertner was

incompetent to revise Judge Nelson's answers to the legal

questions posed by the case. This objection is an apparent

effort to employ the venerable law of the case doctrine, which

states in the large that, unless corrected by an appellate

tribunal, a legal decision made at one stage of a civil or

criminal case constitutes the law of the case throughout the

pendency of the litigation. See, e.g., United States v. Bell, 

988 F.2d 247, 250 (1st Cir. 1993); Abbadessa v. Moore Bus. Forms, 

Inc., 987 F.2d 18, 22 (1st Cir. 1993). 

This principle is of no real assistance to Flibotte.

Although temporally distant from each other, Judge Nelson's

denial of PTL's motions for summary judgment and for judgment as

5

a matter of law, on the one hand, and Judge Gertner's decision to

grant PTL's post-verdict motion for judgment as a matter of law,

on the other hand, occurred in the context of a single trial of a

single case in a single court, with no intervening appeal. Judge

Nelson and Judge Gertner, therefore, play the same institutional

role for the purpose of this litigation.

That confluence of judicial identities is dispositive

here. "Under the law of the case doctrine, as it is commonly

understood, it is not improper for a court to depart from a prior

holding if convinced that it is clearly erroneous and would work

a manifest injustice." Arizona v. California, 460 U.S. 605, 619 

n.8 (1983). Moreover, it is perfectly appropriate for a judge to

refuse to direct a verdict, permit the jury to consider a case,

and thereafter to grant judgment notwithstanding the verdict.

See Talbot-Windsor Corp. v. Miller, 309 F.2d 68, 69 (1st Cir. 

1962). Accordingly, Judge Nelson would have been free to grant

PTL the relief that it sought in its post-verdict motion

notwithstanding his previous rulings; and Judge Gertner, who

stood in his shoes, was at liberty to do the same. Consequently,

Judge Gertner did not arrogate unto herself any undue authority

when she entertained PTL's renewed post-verdict motion for

judgment as a matter of law and reached a different conclusion

than had her co-equal predecessor.

III. III. 

Section 301 Preemption Section 301 Preemption 

Having found no procedural glitch, we turn to Judge

6

Gertner's decision. We review a ruling on a motion for judgment

as a matter of law de novo, applying the identical legal

standards that constrain the district court. See Colasanto v. 

Life Ins. Co. of N. Am., 100 F.3d 203, 208 (1st Cir. 1996). 

Accordingly, "the evidence and all reasonable inferences

extractable therefrom must be examined in the light most

favorable to the nonmovant and a [judgment as a matter of law]

should be granted only when the evidence, viewed from this

perspective, is such that reasonable persons could reach but one

conclusion." Veranda Beach, 986 F.2d at 1383-84.1 

A. A. 

The Legal Landscape The Legal Landscape 

Read literally, section 301 confers federal court

jurisdiction over "[s]uits for violation of contracts between an

employer and a labor organization representing employees in an

industry affecting commerce." Over the years, however, the

 

1This case has a peculiar twist. It appears that Judge
Gertner, though new to the case, ruled on the motion without the
benefit of a trial transcript, and a complete transcript has not
been prepared to this date. We need not probe too deeply into
the question of which way the absence of this transcript cuts.
In most cases, a transcript would form an integral part of the
court's decisional calculus on a post-verdict motion for judgment
as a matter of law. Here, however, the critical issue 
preemption embodies a pure question of law susceptible to
resolution on the face of the pleadings (as supplemented by the
collective bargaining agreement). In ruling on the motion for
judgment as a matter of law, Judge Gertner hewed to this line and
did not make any extraneous factual findings or assumptions.
Because the judge's analysis and decision did not need to engage
any facts derived from trial testimony, this is the rare case in
which the absence of a trial transcript is immaterial to the
correctness of a ruling on a post-verdict motion for judgment as
a matter of law.

7

Supreme Court has placed a heavy gloss on this language,

beginning with its holding that the statute empowers federal

courts to craft federal common law reasonably necessary to

effectuate the objectives of section 301. See Textile Workers v. 

Lincoln Mills, 353 U.S. 448, 451 (1957). This substantive 

authority to declare federal common law soon formed the basis for

an emerging jurisprudence of preemption. See Martin v. Shaw's 

Supermarkets, Inc., 105 F.3d 40, 41-42 (1st Cir.) (recounting 

development of section 301 preemption), cert. denied, 118 S. Ct. 

69 (1997). Today, labor-law preemption casts a relatively wide

net. Thus, section 301 preempts a state-law claim "if the

resolution of [that] claim depends on the meaning of a

collective-bargaining agreement." Lingle v. Norge Div. of Magic 

Chef, Inc., 486 U.S. 399, 405-06 (1988). 

This rule is not without limitations. The Court has

cautioned that "purely factual questions about an employee's

conduct or an employer's conduct and motives do not require a

court to interpret any term of a collective-bargaining

agreement." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 262 

(1994) (citation and internal quotation marks omitted). It also

has warned that section 301 "cannot be read broadly to pre-empt

nonnegotiable rights conferred on individual employees as a

matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 

(1994). Even so, the basic test remains that prescribed by

Lingle and its progeny: that section 301 preempts a state-law 

claim, whether founded upon the state's positive or common law,

8

if a court, in passing upon the claim, would be required to

interpret the collective bargaining agreement. See id. In 

practice, this test boils down to whether the asserted state-law

claim plausibly can be said to depend upon the meaning of one or

more provisions within the collective bargaining agreement.

A state-law claim can "depend" on the "meaning" of a

collective bargaining agreement in two ways. First, a claim so

qualifies if it alleges conduct that arguably constitutes a

breach of a duty that arises pursuant to a collective bargaining

agreement. See United Steelworkers v. Rawson, 495 U.S. 362, 369 

(1990) ("[A] state-law tort action against an employer may be

pre-empted by 301 if the duty to the employee of which the tort

is a violation is created by a collective-bargaining agreement

and without existence independent of the agreement."). Second, a

claim so qualifies if its resolution arguably hinges upon an

interpretation of the collective bargaining agreement. See 

Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) (finding 

section 301 preemption "when resolution of a state-law claim is

substantially dependent upon analysis of the term of an agreement

made between the parties in a labor contract"). If a state-law

claim depends on the meaning of the collective bargaining

agreement in either of these ways that is, under Rawson's 

"duty" rubric or under Allis-Chalmers's "interpretation" rubric  

it is preempted.

B. B. 

The Merits The Merits 

9

At trial, Flibotte prevailed on three state-law claims:

negligence, negligent infliction of emotional distress, and

intentional infliction of emotional distress. Our review of the

pleadings, supplemented by the items that Flibotte included in

the record appendix on appeal (such as the collective bargaining

agreement) confirms that none of these three claims involves

rights that are made non-negotiable under state law and that all

of them are preempted by section 301. For clarity's sake, we

begin with the negligence claims and then focus on the

intentional infliction claim.

1. Negligence. If Flibotte's two negligence-based 1. Negligence. 

claims are to escape preemption, he must establish that they do

not spring from duties imposed by the collective bargaining

agreement, but, rather, that PTL has acted "in a way that might

violate the duty of reasonable care owed to every person in

society." Rawson, 495 U.S. at 371. This would be no mean feat. 

Even assuming, favorably to Flibotte, that PTL allegedly breached

duties derived from a source extrinsic to the collective

bargaining agreement, the resolution of the negligence claims

nonetheless depends upon the interpretation of that agreement.

Consequently, those claims are preempted under section 301. We

explain briefly.

Flibotte's damage claim, as framed in his complaint,

links both his economic losses and his emotional distress

directly to his termination. In order to prevail on these

claims, he must prove that PTL wrongfully discharged him. If PTL

10

acted within its contractual rights in severing the tie, then it

could not have breached its general duty of care. It is clear to

us that we cannot resolve this question, involving the propriety

of Flibotte's firing, without substantial inquiry into the

intricacies of the collective bargaining agreement. After all,

the appellant concedes that PTL cashiered him because he failed

to appear for a scheduled drug test, and the collective

bargaining agreement in force here the NMFA governs both the

frequency of testing, see NMFA Uniform Testing Procedure, Sec. 

IIB, and the consequences of a failure to take an offered test,

see NMFA, Art. 35, Sec. 3. Hence, it is impossible to determine 

PTL's negligence without inquiring into its rights and

obligations as described by the collective bargaining agreement.

This mandatory consultation separates the instant case from those

that raise purely factual questions and thus begets section 301

preemption.

If more were needed and we do not think that it is 

we also would note that Flibotte's negligence claims are

preempted to the extent that they stem from his contention that

the conditions of the requested test were unsanitary and violated

the employer's duty to provide a suitable hygienic environment

for the examination. This duty derives from the employment

relationship as defined in the collective bargaining agreement,

and as such, it cannot form the basis for a state-law claim. A

plaintiff cannot skirt section 301 preemption by the simple

expedient of recharacterizing an employer's substandard

11

performance of duties that devolve upon it pursuant to the terms

of the collective bargaining agreement as a tort. See Rawson, 

495 U.S. at 371-72.

2. Intentional Infliction of Emotional Distress. This 2. Intentional Infliction of Emotional Distress. 

leaves only the appellant's claim for intentional infliction of

emotional distress. To prevail on that claim, Flibotte had to

prove that PTL (1) intended to inflict emotional distress by (2)

undertaking actions that were extreme and outrageous, thereby (3)

causing emotional distress which (4) was severe. See Wagenmann 

v. Adams, 829 F.2d 196, 213-14 (1st Cir. 1987); Agis v. Howard 

Johnson Co., 355 N.E.2d 318-19 (Mass. 1976). Under Massachusetts 

law, "extreme and outrageous conduct" is behavior that is "so

outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community."

Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass. 1987). 

PTL's rights and obligations under the collective

bargaining agreement are obviously central not only to an inquiry

into PTL's intentions, but also to an inquiry into whether PTL

conducted itself in a sufficiently outrageous manner to give rise

to liability under state tort law. It is a well-settled

principle that a party cannot be liable if it does no more than

"insist upon [its] legal rights in a permissible way, even though

[it] was well aware that such insistence is certain to cause

emotional distress." Restatement (Second) of Torts, 46 cmt. g

(1965); see Rush v. United Technologies, 930 F.2d 453, 456 (6th 

12

Cir. 1991). If PTL was within its rights to require Flibotte to

take a drug test at the designated site and to terminate him when

he refused to do so, a claim for intentional infliction of

emotional distress cannot lie.2 Because the resolution of these

issues necessitates examination of the collective bargaining

agreement, the claim is preempted. See Allis-Chalmers, 471 U.S. 

at 213; see also Jackson v. Liquid Carbonic Corp., 863 F.2d 111, 

119 (1st Cir. 1988) (upholding section 301 preemption in a drug

testing case on the ground, inter alia, that "[o]nly by probing 

the contours of the [collective bargaining agreement] can one

answer whether the [drug testing] program was legitimately

implemented").

IV. IV. 

Conclusion Conclusion 

We are not without sympathy for Flibotte, who obtained

a large verdict many years ago, then was plunged into a longeval

legal limbo, and ultimately saw his prized damage award vanish

when a new judge came on the scene. It is understandable that

Flibotte views the newly arrived judge as the juridical

equivalent of the Grinch who stole Christmas, but in actuality,

the judge did no more than her duty. As she recognized, the

resolution of each of Flibotte's state-law claims requires an
 

2It bears repeating that an arbitrator has already ruled in
PTL's favor on the propriety of Flibotte's discharge, and that an
historic reason for section 301's extensive preemptive scope was
"to ensure that, when developed, the resultant rules would be
applied through the grievance procedures agreed upon between
unions and management." Jackson v. Liquid Carbonic Corp., 863 
F.2d 111, 114 (1st Cir. 1988). This reason remains valid today.

13

examination of the terms of the collective bargaining agreement

and, as a result, the claims are preempted under section 301.

Because the district court correctly divined and applied the law,

we can go no further.

Affirmed. Affirmed. 

14